THOMPSON and Another *v.* ALLEN and Another.

The assignee of an equitable title to land, takes it subject to all existing equities.

The assignee of a covenant for the conveyance of real estate is not entitled to demand specific performance thereof, unless his assignor was in a situation to have demanded it.

APPEAL from the *Decatur* Circuit Court.

*Thursday,
June 16.*

WORDEN, J.—Complaint by the appellants as the executors of *John Thompson*, deceased, against the appellees, alleging that in 1836 the said *Jefferson W. Allen* purchased from the *United States* certain lands described in the bill, situated in *Decatur* county, and fully paid for the same, and took from the receiver certificates of such payment; that afterwards, on the 16th of *November*, 1838, for a valuable consideration, to-wit, 1,000 dollars, paid to said *Allen* by one *David Ferrier*, the said *Allen* sold said lands to said *Ferrier*, and executed to him a covenant in writing, binding himself, his heirs, &c., to make to *Ferrier*, his heirs or assigns, a general warranty deed for said lands, as soon as a patent therefor could be obtained from the *United States;* that in and by said covenant it was stipulated that *Ferrier* had, at that date, fully paid said *Allen* for the land, and *Ferrier* was authorized thereby to forthwith take possession of the same. The covenant mentioned is set out, and is as follows, viz:

"I hereby bind myself, my heirs, executors, and administrators, to make, or cause to be made, to *David Ferrier*, his heirs or assigns, a general warranty deed for two hundred and forty acres of land in *Decatur* county, in the state of *Indiana*, being, &c. (here follows a description of the land), so soon as a patent from the *United States* can be obtained for said land. Said *Ferrier* has paid me in full for said land, and is authorized to take possession forthwith. Witness my hand and seal, this 16th *November*, 1838. [Signed] *Jefferson W. Allen.* [Seal.]"

It is further averred, that on the 27th of *September*, 1839, *Ferrier* was indebted to said *John Thompson* (then in life),

May Term, 1859.

Thompson
v.
Allen.

in the sum of 250 dollars, 48 cents, and to one *Jane Innis* in the sum of 396 dollars, 91 cents; and for the purpose of securing the payment of those sums within thirty days, and making the same a lien on the land, *Ferrier*, being in possession thereof under his purchase, executed and delivered to said *Thompson* and *Innis* a mortgage on the same for the purpose aforesaid, which was duly recorded; and for the purpose of more effectually securing the payment of said money, *Ferrier*, at the same time, assigned said covenant to *Thompson* and *Innis* to secure them the respective sums due them, which assignment was also duly recorded; that *Allen*, at the time thereof, had full notice of said mortgage and assignment; that he has procured patents for the land, and has them in his possession; that the legal title is in *Allen*, and that he has not conveyed in pursuance of his covenant; that the sum due on the mortgage to *Thompson* is unpaid, &c.; that *Ferrier* is wholly insolvent, and has no means whatever, save the lands, out of which the debt can be made. There are other matters stated in the complaint, in reference to supposed subsequent incumbrances, but as no question arises upon them, they need not be noticed.

Prayer, that the land, or enough of it to pay the debt, be sold; that *Allen* be required to make a deed, or in default, that a commissioner be appointed for that purpose, &c.

*Jane Innis* is made a defendant, who appears and answers, admitting the facts stated, and prays relief.

A default was taken as to *Allen*, and a decree rendered for the plaintiff; but being a non-resident, and having been brought into Court by notice only, he applied, within the time limited by the statute, and procured the default to be set aside, and filed his answer.

*Allen's* answer admits the purchase of the land by him, as charged, and that he has procured the patents for the same. He admits the sale of the land to *Ferrier*, or rather an exchange of it for certain property in *Ohio*. He admits the execution of the covenant to *Ferrier*, but avers that at the same time *Ferrier* gave him a bond for in-lot No. 66, in *North Georgetown, Brown* county, *Ohio*, by

which he bound himself to make to *Allen* a general warranty deed for said property, by the 15th day of *April*, 1840, which obligation is set out as follows:

"This shall oblige me, my heirs, executors, and administrators, to make, or cause to be made, to *Jefferson Allen*, his heirs or assigns, a general warranty deed for in-lot No. sixty-six (66), in *North Georgetown, Brown* county, *Ohio*, by the 15th day of *April*, 1840, containing a brick building, with other improvements. Said *Allen* is to have possession thereof immediately, except of the part occupied by *A. Ellison*, Esq.; of that, by the first of *January* next. Witness my hand and seal, this 16th of *November*, 1838. Said *Allen* has paid me in full. [Signed] *David Ferrier.* [Seal.]   Attest: *Joseph Shepherd.*"

It is averred that *Ferrier* exchanged with said *Allen* the lot in *Georgetown* for the land in *Indiana*, which was the only consideration he gave, or avers to give, for the *Indiana* lands; that at the time of the exchange, there were divers liens on the *Georgetown* property, in the form of a mortgage, and for a balance of purchase-money unpaid by *Ferrier*, he not having received a title therefor; that to make *Allen* safe, and indemnify him against said liens, *Ferrier* assigned to him certain notes, which, as far as possible, have been collected and applied to the discharge of such liens, still leaving a balance of over 900 dollars outstanding as liens upon the property; that *Ferrier* has never discharged the liens on the lot, nor any part thereof, nor made a deed to *Allen* for the same; that the legal title to the *Georgetown* property has never been obtained, and that in addition to the liens, there are contingent rights of married women against the same; that the *Georgetown* property was the only consideration for the land; that *Ferrier* never paid any money for the same, but the foregoing is the manner of payment specified in the bond or covenant from *Allen* to *Ferrier;* that *Ferrier* has never performed any part of his agreement, and that *Allen* had no knowledge of the mortgage or assignment set up until within fourteen months last past.

The foregoing are the substantive matters set up in the

answer. To this answer the plaintiffs demurred, and on the demurrer being overruled, they excepted.

A replication in denial was filed, and the cause was tried by the Court, resulting in a finding and judgment for the defendants.

The errors relied upon to reverse the judgment are—

1. That the Court below improperly set aside the former decree, without a sufficient answer having been first filed.

2. The Court improperly overruled the demurrer to *Allen's* answer.

3. The Court erred in dismissing the plaintiffs' bill, and in refusing to enter a decree upon the bill for the foreclosure of the mortgage.

The first and second errors relied upon, involve but one question, and that is, whether the answer is sufficient and valid.

The application to the case, of a few well settled principles, will be sufficient to dispose of it. The plaintiffs' testator was but the purchaser of a merely equitable title, and he cannot occupy the position of a *bona fide* purchaser of a legal title, without notice of a prior equity. The doctrine, as applied to a *bona fide* purchaser of a legal title without notice, has no application to a purchaser of a mere equity, but such purchaser takes subject to all prior equities. 2 Lead. Cases Eq., part 1, pp. 63 to 68. In the case of *Chew* v. *Barnet*, 11 S. and R., 389, where the question was, in substance, as to the right of a vendor to refuse to make a conveyance of the legal title to a purchaser from the vendee, without receiving payment of the whole purchase-money, Gibson, C. J., said that "When it is asserted that a purchaser, for a valuable consideration, takes the title free of every trust or equity of which he has no notice, it is intended of the purchase of a title perfect on its face; for every purchaser of an imperfect title, takes it with all its imperfections on its head. It is his own fault that he confides in a title which appears defective to his own eyes, and he does so at his own peril. Now every equitable title is incomplete on its face. It is, in truth, nothing

more than a title to go into chancery to have the legal estate conveyed; and, therefore, every purchaser of a mere equity takes it subject to every clog that may lie on it, whether he has had notice of it or not. But the purchaser of a legal title, takes it discharged of every trust or equity which does not appear on the face of the conveyance, and of which he has had no notice either actual or constructive."

The interest passing to *Thompson* and *Innis* by the mortgage and assignment being a mere equity, we are of opinion that they occupy a position no more favorable than that of *Ferrier* himself, and are entitled to no rights as against *Allen*, except such as *Ferrier* might claim for himself.

It is insisted that *Allen*, having put *Ferrier* in possession of the land under the contract of sale, and having, in the contract, acknowledged the receipt of the purchase-money, thus holding *Ferrier* out to the world as the owner, is estopped from denying what is thus admitted in the contract. We are of opinion, however, that the doctrine of estoppel, either legal or equitable, is not applicable to the case. *Allen* did no act to induce the assignment. He held out no inducement to any one to purchase. He did not stand by while the purchase or assignment was being made, nor was he cognizant of the transaction. He was never placed in a position where he would be called upon in equity and good faith to notify any one of the condition of *Ferrier's* claim. He simply made the contract as set forth, and that does not estop him from setting up his defense to the complaint for specific performance.

The two papers executed by the parties, are but parts of one contract, and are to be treated as together constituting a single instrument. *Leach* v. *Leach*, 4 Ind. R. 628, and authorities there cited.

Such being the case, it follows that specific performance cannot be compelled against *Allen;* because the contract has been in no part performed by *Ferrier*. Before *Allen* can be compelled to perform the contract on his part, the incumbrances on the *Georgetown* property must not only

May Term,   be removed, but a deed must be made or tendered to him
   1859.    for the property.

ZEKIND        It is insisted that the Court should not have dismissed
   v.       the bill, but, the defense being allowed to prevail, so far as
NEWKIRK.    the incumbrances on the property in *Georgetown* are con-
cerned, that the property should have been ordered to be
sold, and the proceeds applied to the payment of the in-
cumbrances first, and then to the plaintiffs' claim.

But this clearly should not have been done, unless the
Court could, in some way, vest the legal title to the pro-
perty in *Georgetown* in *Allen*. This the Court could not
do, as the property lies beyond its territorial jurisdiction.
*Allen* cannot be required to part with his legal title to the
property in controversy, until the legal title to that for
which this was given in exchange, is secured to him. A
decree *in personam* against *Ferrier*, that he convey the
*Georgetown* property to *Allen*, might be utterly valueless
to him, and this is all the Court could do by way of secur-
ing him his title.

On the whole, we are of opinion that the judgment be-
low is right, and must be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

DAVISON, J. was absent.

*J. Gavin, J. R. Coverdill,* and *O. B. Hord,* for the ap-
lants.

*J. S. Scobey* and *W. Cumback,* for the appellees.