### E. H. SATTERFIELD et al. *v.* H. KELLER et al.

Where a promise to sell to two persons jointly, contains the stipulation that such purchasers are to furnish a reliable city acceptance by a certain time, or the contract shall be null and void, the tender of the accepted draft of *one* of the purchasers is not a performance of the stipulation.

A party seeking to compel the specific performance of a contract of promise to sell, must himself show a specific compliance with his own obligations.

APPEAL from the District Court of the Parish of Avoyelles, *Cullom,* J. *H. & S. L. Taylor* and *W. B. Lewis*, for plaintiffs and appellants. *Cannon & Irion, O. N. Ogden* and *A. N. Ogden*, for defendants.

VOORHIES, J. A proper construction of the act containing the promise of sale from the defendants to the plaintiffs, will determine the respective rights of the parties. This instrument reads as follows :

"State of Louisiana, Parish of Avoyelles.

" Before me, *Aristide Barbin*, Notary Public in and for the parish of Avoyelles and State of Louisiana, and in presence of the undersigned competent witnesses, personally came and appeared *Messrs. Henry Keller* and *David C. Keller*, both of the parish of St. Landry, and *James Keller*, of the parish of Avoyelles, of the one part; and *Edward H. Satterfield* and *Edward Smith*, of the parish of Avoyelles and State of Louisiana, of the second part ; who declared that they have entered into the following agreement, to-wit :

" I. The said appearers of the first part hereby obligate themselves to sell, transfer and deliver unto the appearers of the second part, *Edward H. Satterfield* and *Edward Smith*, the following property, to-wit : 1st, a certain plantation situated, lying and being on the left descending bank of Bayou Bœuf, in this parish, and containing fifteen hundred and thirty-five acres, together with all the buildings and improvements thereunto belonging, or in anywise appertaining thereto ; 2d, eighty-three head of slaves (names omitted) ; 3d, all the stock and working mules and horses, to-wit, 32 head of mules, 2 mares, 35 head of neat cattle, 2 pair oxen ; 4th, all the farming utensils, without any reserve ; 5th, all the corn, except three thousand bushels, in sacks ; 6th, sixty acres of seed cane, to be matlassed by vendors :—for the price and sum of one hundred and thirty thousand dollars, payable as follows.:

" Twenty-five thousand dollars, a draft on *Messrs. West, Renshaw & Cammack,*

or some other responsible house of the city of New Orleans, payable on the 15th of April, eighteen hundred and fifty-nine; and the balance payable in five annual installments, to-wit :

"On the 15th of April, 1860; on the 15th of April, 1861; on the 15th of April, 1862; on the 15th of April, 1863; on the 15th of April, 1864, with eight per cent. per annum interest·from maturity till paid, except the last installment, which bears same rate of interest from the 15th of April, 1863, till paid.

" The vendors are to retain mortgage.

" It is understood and agreed between the contracting parties, that this act of promise of sale is to be null and void unless the said *Satterfield* and *Smith* will furnish to the other party the said city acceptance for the first aforesaid install-ment, within this date and the first day of January next, eighteen hundred and fifty-nine.

" The said vendors hereby obligate themselves to keep the said sugar-house in-sured until the sale hereby promised is passed, or the said plantation delivered, with said sugar-house, at the rate of fifteen thousand dollars. And if the same should be destroyed before said period, the said purchasers are to accept the in-surance in lieu of said sugar-house.

" The vendors hereby obligate themselves to release all liens, privileges and mortgages that may affect said property or any part thereof, on or before the day of sale aforesaid.

" The said property is to be delivered as soon as the said vendors are able to take off the crops now growing on said plantation.

" The words ' *Edward Smith*,' on the first page, ' twins' on the second, and the ' 15th of April, 1853, till paid,' interlined on the 4th page, and the word ' 22 ' and date, erased before signing.

" Thus done and passed, at Marksville, Avoyelles, this fifteenth day of Octo-ber. eighteen hundred and fifty-eight, in presence of *Messrs. F. P. Hitchborn* and *Ludger Barbin*, of lawful age and domiciliated in this parish, who have signed, with the contracting parties, and I, Notary Public, after the reading thereof.

F. P. HITCHBORN, } Witnesses.
L. BARBIN,

HENRY KELLER,
D. C. KELLER,
JAMES KELLER,
E. H. SATTERFIELD,
EDWARD SMITH.
ADE. BARBIN, Not. Pub."

There is a clause, in this instrument, which declares the nullity of the promise of sale, " unless the said *Satterfield* and *Smith* will furnish to the other party the said city acceptance for the first aforesaid installment, within this date and the 1st day of January, 1859." Before the expiration of this delay, the plaintiffs could not be called upon to deliver the accepted draft in question : that is certain. And it is no less certain that, under the very terms of the deed, the promise to sell was null and void, unless the plaintiffs furnished this draft within that time. But granting that *Satterfield* and *Smith* were effectually bound to furnish the ac-cepted draft, how do they stand now ? They sue for the specific performance of a contract of which they have failed to perform the very stipulation which was a prerequisite to perfecting the deed of sale. They did not even attempt, in proper time, to furnish such a draft as the one the parties contemplated. The draft of *Satterfield*, although accepted by a responsible firm of the city, was not a com-pliance with the contract : it should have been the draft of *Satterfield* and *Smith*.

The purchasers, as well as the vendors, did not imagine that any body's draft would answer the purpose, however irresponsible the drawer might be. Such seems to have been the understanding of the plaintiffs' own counsel; for they allege as a grievance, that the District Judge would not, during the trial, allow *Smith* to sign the draft as drawer or endorser. A party seeking to compel the specific performance of a contract of promise of sale, must himself show a specific compliance with his own obligations, or at least an attempt to that effect. This point we expressly ruled in an analogous case lately decided in New Orleans, (*Graugnard* v. *Lombard*, ante, p. 234.)

But the plaintiffs' demand is the more unreasonable, as they apply to the courts for the execution of a contract different in many respects from the one which they entered into. Under pretence that there are over seventy thousand dollars mortgages on the property in question, they claim the right to hold in hand the amount of the three first installments, including the sum of $25,000, to be paid by an accepted draft, and that, in the teeth of their own stipulations that the deed of sale should be passed after the delivery of this draft within the specified time, and that the sale should otherwise be null and void.

It was proper for the District Judge to decree the nullity of the contract entered into between the parties litigant; but we are of opinion, that the damages awarded by the amicable compounders ought to have been disallowed under the circumstances. The plaintiffs having failed to make good their demand for the enforcement of the promise of sale, were not entitled to damages of any kind.

It is, therefore, ordered and decreed, that the judgment of the District Court be amended, by disallowing the damages allowed therein to the plaintiffs, and that, in other respects, it be affirmed; the costs of both courts to be borne by the said plaintiffs.