## BOREL and others *v.* MEAD and others.

January Term, 1884.

1. CONTRACT UNDER SEAL—CONSIDERATION—SPECIFIC PERFORMANCE.

A contract under seal is presumed to be for good consideration, and a bill for specific performance of it is not demurrable because it does not show what the consideration was.

2. SPECIFIC PERFORMANCE—MUTUALITY OF CONTRACT.

A bond to convey a mine, upon the payment of a certain sum of money, will be specifically enforced notwithstanding it is unilateral, and signed only by the party to be charged.[1]

BRISTOL, J., dissenting.

Error to the Third Judicial District Court, Grant county.

*T. F. Conway*, for plaintiffs in error.

*John D. Bail*, for defendants in error.

AXTELL, C. J. This is a case of an option or what is sometimes called bonding a mine. The owners of the mine, defendants herein, desiring to sell their mine, entered into a written agreement, in form of a penal bond, with plaintiffs, that upon payment by them to defendants at a future day, of a stipulated sum of money, defendants would convey to plaintiffs their mine. This agreement is in writing, is certain and fair in all its parts, is capable of being performed, and is under defendants' hand and seal. Plaintiffs signed no agreement. Upon the day stipulated in said agreement, plaintiffs tendered the sum of money agreed upon and demanded the mine; defendants declined the money, and refused to comply with their agreement. Plaintiffs bring this suit in equity, and ask the court to enforce the contract. Defendants demur to plaintiffs' bill for want of equity and set up as specific ground of demurrer that the bill does not show upon its face what the consideration was, if any, that defendants had or were to receive for entering into the contract to convey; also that there was no mutuality; that the contract was unilateral; that defendants alone were bound. The court sustained the demurrer, and plaintiffs appealed.

To the first point, it is sufficient to say the contract being under seal, imports a consideration; to sustain the demurrer on the ground that there was not a valuable consideration was not only assuming the fact but also depriving the plaintiffs of an opportunity of proving a consideration. The contract being under seal, we must presume

[1] See note at end of case.

that there was a valuable consideration till the contrary is shown. The court, in sustaining the demurrer, prevented the plaintiffs from doing this.

As to the second point, the condition of mutuality is, in general, sufficiently satisfied if there be any consideration of the one side as well as the other. It is also held that a court of equity, in actions for the specific performance of optional contracts and covenants to lease and convey lands, will enforce the covenant, although the remedy is not mutual, provided it is shown to have been upon a fair consideration. So it is also held not to be necessary to the specific performance of a written agreement that it should be signed by the party seeking to enforce it. If the agreement is certain, fair, and just in all its parts, and signed by the party sought to be charged, that is sufficient. The want of mutuality is no objection to its enforcement. The very nature of an option is unilateral; one party has property to sell, the other has only, perhaps, ability to make sales. The skill and ability of the one is the consideration which induces the other to bond the mine. If the agreement is fair in every respect, and neither party was deceived in making it, there can be no objection to enforcing it. There is certainly sufficient mutuality to support it, if we take the facts, as stated in the bill, to be true, and this the demurrer does. See 5 Wait's Act. & Def. 788, and authorities there cited.

We are of opinion that the court below erred in sustaining the demurrer, and the case is remanded for further action in accordance with this opinion.

BELL, J. This is an appeal from a judgment of the court below sustaining a demurrer of the defendants to a bill in a suit for specific performance. The suit is brought for the specific performance of what is claimed in the bill to be a contract to convey an interest in a mining claim, situated in the Lake Valley mining district, in the county of Grant, executed by one William Mead to the grantors of the plaintiffs. The instrument is one that is commonly called a mining bond. The defendants demurred to the bill, and set forth as grounds of their demurrer—*First*, that the said bill contains no matter of equity whereon this court can ground any decree, or give complainants, or either of them, any relief against defendants, or either of said defendants; *second*, upon the facts stated in the said bill, the complainants have a plain, adequate, and complete remedy at law for their alleged grievance, if any they have; *third*, the bond, memorandum in writing, contract, and agreements referred to in said bill, and upon which the said suit is professedly founded, is without consideration or mutuality between the parties thereto, and imposed no valid, binding, or equitable obligation on the defendants which the court will enforce.

We shall not consider the first ground of demurrer separately, as

it is disposed of by the reasoning applicable to the other two grounds, which we proceed to consider.

We do not think that the second ground or cause for demurrer is well founded. We do not think that the plaintiffs have a plain, adequate, and complete remedy at law for their alleged grievance. In considering the question we are called upon to determine, if possible, what the real intent of the parties was at the time of the execution of the instrument in question. It seems entirely clear to us that at that time the intent of the parties was that the plaintiffs' assignor should be entitled, upon the payment of the sum of $3,300 within the time limited to the defendant Mead, to a good and sufficient conveyance of a one-third interest in the property referred to in the instrument. This intent is, we think, fairly to be inferred from an inspection of the instrument itself; and, in the absence of any proof of fraud, undue influence, or want of actual consideration, the instrument is binding and valid, and can be enforced by a decree of a court of equity. That a court of equity has power to decree specific performance of such an instrument is well settled upon the best authority.

In the case of *Ensign* v. *Kellogg*, 4 Pick. 1, the court says, "we are satisfied that no subject is more proper for the power of a court of chancery in decreeing specific performance than a contract for the sale of real estate; for what is agreed to be done ought in conscience to be done, nor is the remedy at law for damages complete or adequate, for the thing contracted for is wanted,—and the value in money may often be unsatisfactory compensation."

That case was one brought upon a bond in a penal sum conditioned for the conveyance of certain real estate upon the payment of a stipulated price. In that case, a part of the consideration was paid upon the making of the bond, and the remainder on the last day named in the condition, and in the case at bar the consideration for the mine was tendered within the time limited by the condition of the bond, and is to be regarded in law as paid when tendered. Upon this subject Judge STORY says: "What these courts seek to be satisfied of, is that the transaction in substance amounts to, and is intended to be, a binding agreement for a specific object, whatever may be the form or character of the instrument. Thus, if a bond with a penalty is made upon condition to convey certain lands upon the payment of a certain price, it will be deemed in equity an agreement to convey the land at all events, and not to be discharged by the payment of a penalty, although it has assumed the form of a condition only. Courts of equity, in all cases of this sort, look to the substance of the transaction and the primary object of the parties; and, where that requires a specific performance, they will treat the penalty as a mere security for its due performance and attainment." 1 Story, Eq. Jur. § 715; citing numerous authorities in support.

In the case of *Dooley* v. *Watson*, 1 Gray, 414, Chief Justice SHAW says: "The promise of the defendant to pay plaintiff one hundred

dollars, if the defendant should fail to perform his agreement to convey the land, was a mere security for the performance of that agreement. Courts of equity have long since overruled the doctrine that a bond, for the payment of money, conditioned to be void on the conveyance of land, is to be treated as a mere agreement to pay money. When the penalty appears to be intended merely as a security for the performance of the agreement, the principal object of the parties will be carried out."

It seems to us, upon principle, and upon careful examination of the authorities cited, that, in the suit at bar, it was clearly the intention of the parties that the plaintiffs' assignor should have a right to a conveyance of the property, and should not be relegated to his action at law upon the bond for damages; and that that was the principal object of the parties, and should be carried out.

We come now to consider the third ground of demurrer, which is that the bond, *memoranda* in writing, contract, and agreements referred to in the bill are without consideration or mutuality between the parties. We shall have to treat the questions of consideration and mutuality separately. And first as to consideration: The instrument itself, which is the basis of the suit, is in the form of a bond. It is under seal. Can it be urged, upon demurrer, that such an instrument is without consideration? We think not. The seal imports consideration. It imports valuable consideration. In a case at law the presumption of consideration is so strong the defendant would be estopped from denying it, or offering proof tending to impeach it. In a case in equity this presumption of consideration, imported by the seal, still remains; and, while in such a suit the court will permit a party to rebut that presumption by proof of the facts, yet, until the presumption is met by an answer alleging the actual want of consideration, it must stand, and a party will not be permitted to say of an instrument executed by him, and under seal, that no consideration is shown upon its face. We are therefore of opinion that the question of want of consideration is not properly before us on the demurrer, and for that reason the demurrer must be overruled.

We now come to the question of the alleged want of mutuality between the parties. This is a question of some difficulty, and its meaning appears to have been variously understood by the courts. Parsons, in his Work on Contracts, has collated the authorities in a note appended to page 409 of vol. 3 of the sixth edition. Reference to some of these cases is pertinent here: "The meaning of the rule of equity requiring that contracts must be mutual, is not very clear; nor is it easy to make a classification of the cases in which it has been announced as the ground of decision. By mutuality seems sometimes to be intended mutuality of *remedy*, in other cases mutuality of *agreement;* and in neither sense is the rule of universal application. *Southeastern h. Co.* v. *Knott,* 10 Hare, 122; 17 Eng. Law & Eq. 555. It

is now perfectly established that a purchaser may compel a conveyance, although the vendor could not have enforced specific performance because of some infirmity in the title. *Sutherland* v. *Briggs*, 1 Hare, 34. And in cases within the statute of frauds, it is now clear (although a contrary opinion upon this point was expressed by Lord Redesdale) that the circumstance that the defendant only signed the agreement so that he could not have compelled the plaintiff to perform it, constitutes no good ground of objection to the plaintiff's suit." *Backhouse* v. *Mohun*, 3 Swanst. 434, *n.*, and other authorities cited.

In one case cited in the note in question, it was held that the plaintiff's filing a bill for specific performance is a sufficient assent to remove an objection of want of mutuality. *Goodwin* v. *Lightbody*, Daniell, 153. See *Field* v. *Boland*, 1 Dru. & Wal. 46.

The case of *Stansbury* v. *Fringer*, 11 Gill & J. 149, strongly supports the views above expressed. There it was agreed between A. and B. that A. should hold certain lands of B. for a term of years, paying taxes and making certain improvements; and it was further agreed that A. might at any time during the term, at his pleasure, become the purchaser of the land, at a stipulated price, and A., having tendered the price, filed a bill to compel B. to make the conveyance. It was objected, that the contract was not mutual, because there was no obligation to purchase upon the plaintiff; but the court held that by occupying the land, paying taxes, and making the stipulated improvements, he had given a consideration for his privilege to purchase the land, and specific performance was decreed.

In the case of *Western R. R.* v. *Babcock*, 6 Metc. 346, it appears that the owner of a certain parcel of land entered into an agreement under seal with the railroad company, by which he granted them the privilege of running their road through his land, upon payment of a certain compensation for the soil appropriated and the damage occasioned. In the bill filed by the company for a specific performance, it was contended that the contract wanted mutuality inasmuch as the plaintiffs were under no obligation on their part to take the land or pay the price. But the objection was overruled. From a portion of the opinion of Chief Justice Shaw in this case, it can be inferred that it was held that a positive agreement existed on the plaintiff's part to act under the contract, where in the event of his acting under it, there will be a certain obligation upon him to pay a consideration,— in other words, that the license to act is sufficiently supported by the promise to pay for using the license in case he does use it. The circumstance that a substantial consideration did not need to be shown *at law*, the contract being under seal, was also adverted to.

The doctrine of the common law that mutuality is only necessary where the want of mutuality would leave one party without a valid or available consideration for his promise, seems to express all the mutuality in the *agreement* of the parties as distinguished from reciprocity of remedy that equity requires as a necessary condition to

a specific performance. "It is the general rule that where the obligation to perform rests upon one of the parties only, equity will enforce the contract." *Van Doren* v. *Robinson*, 1 C. E. Green, 256. But in the same case the chancellor held that "the principle does not apply when the contract, *by its terms,* gives to one party a right to the performance which it does not give to the other; as where a lease contains a covenant on the part of the lessor for a renewal of the lease at the expiration of the term. It is now settled that such a covenant may be enforced against the lessor, though there is no reciprocal obligation on the part of the lessee to accept the renewal." Citing Fry, Spec. Perf. § 948. Such a contract being founded on considerations, can and should be enforced, when it was evidently the intent of the parties, as in this case, to give to the obligee the right to take the property upon the payment of the stipulated price. The question of the consideration we have already passed upon.

In the case of *Green* v. *Richards*, 8 C. E. Green, 32, the following paper was held to be a contract which could be specifically enforced:

"Received from Mrs. Catherine Green one hundred (100) dollars on account of payment on house No. 71 Ferry street; due on account of rent, one hundred and twenty (120) dollars.
    [Signed]              "THOMAS E. RICHARDS."

Indorsed on the foregoing receipt was the following:

"This is to show that I agree to sell to Mrs. Capt. Green the house and lot No. 71 Ferry street, for the sum of twenty-five hundred (2,500) dollars; and that when there is five hundred (500) dollars paid, and the back rent, I will give her a deed, and take a mortgage for two thousand (2,000) dollars.
    [Signed]              "T. E. RICHARDS."

The chancellor in this case says: "This is a contract certain and definite as to the subject-matter, the price, and the condition precedent. * * * This agreement does not come within the decisions which hold that an agreement to entitle to specific performance must be mutual, and such that the defendant could have had that remedy. These decisions themselves are controverted and conflicting. But they do not apply to a case where the complainant has paid a part or the whole of the consideration, *or a consideration for the defendant signing the agreement;* or to a case of a lease for years, with the option of purchasing during the term; or to cases where the contract, by its terms, gives one party a right to the performance which it does not give to the other; citing *Van Doren* v. *Robinson, supra.* In such cases specific performance is constantly decreed."

In a well-considered case in the same state (New Jersey) Chancellor PENNINGTON says in a case for specific performance upon a unilateral contract: "The complainant did not, indeed, sign the

paper, (an instrument under seal to convey land,) and it was never intended that he should; but the papers contain conditions on his part which the evidence shows he faithfully performed. The case is this: A party signs an agreement to do certain things, after the other shall have performed on his part conditions which are precedent; these conditions being performed, upon requiring the party who signed the agreement to fulfill his part, he says, 'I am not bound, because you never signed the agreement.' I can see no propriety in such a view of the case. There was mutuality in the very terms of the agreement." *Laning* v. *Cole*, 4 N. J. Eq. 229. Optional contracts are not favored in equity, though if founded on consideration and free from objection in other respects, are enforced. *Pinner* v. *Sharp*, 23 N. J. Eq. 274. Any sufficient consideration would make such unilateral contracts binding in equity. 10 C. E. Green, 554. See, also, *Reynolds* v. *O'Neil*, 11 C. E. Green, 223.

Upon all authorities above cited and upon principle, we see no reason why a person may not, for a good consideration, bind himself to do a thing, though he has no reciprocal remedy against the person to whom he is bound. If such unilateral agreement is based upon good consideration, and there be no other objection to it, we think that it should be enforced. In the case before us, it does not appear but that there was a perfectly valid consideration; one is presumed, as we have already decided, upon the record before us.

I have dwelt thus at length upon the subject of alleged want of mutuality, because my learned associate, in his opinion in the court below, principally bases the result arrived at there, upon the fact, that because there was no promise to pay, or actual payment and acceptance, there was no mutuality and no completed contract that equity would enforce. That opinion seems to have been based upon a *dictum* of Judge HALLETT in the case of *Smith* v. *Reynolds*, 8 Fed. Rep. 696. The judge in that case, which was one brought upon a similar instrument to the one before us, but where the question was before him upon an exception to the answer setting forth want of consideration, and not upon a demurrer, seems to have proceeded upon the assumption that no case could be maintained upon an instrument unless there was a reciprocity of remedy. He cites no authorities, but says: Was it possible that one party could be bound to sell, while the other party was not bound to buy? He does not pretend to have considered the law with care; for he adds, that at the final hearing, and upon a more extended examination of the authorities, his views might be modified. After all, the question before Judge HALLETT was, whether or not an answer to an action for specific performance upon an instrument similar in form to the one at bar, setting up want of consideration, was a good answer, and he holds that it was. I am of the opinion that he was right, but this case does not come before us upon that question.

The case of *Gordon* v. *Darnell*, 5 Colo. 302, was also relied upon

in the court below as upholding the doctrine that such an instrument as is here sued upon, is void for want of mutuality. A careful examination of that case does not sustain the position. The court in that case says, in regard to an instrument similar in its character to the one before us, "until acceptance by the obligee or the performance of some act equivalent to an election to purchase under the terms mentioned therein, it is *nudum pactum.* Its legal effect is that of a continuing offer to sell, which is capable of being converted into a valid contract by a tender of the purchase money, or performance of its conditions, whatever they may be, within the time stated and before the seller withdraws the offer to sell." It therefore holds that such a contract becomes binding, at least, if within the time limited the party desiring to purchase makes tender of the purchase money. We simply go further and say that such a contract, if based upon good consideration, is binding upon the obligor until the time limited by its terms has expired and there has been a failure on the part of the obligee to avail himself of the privilege granted.

It follows, from the views here expressed, that the judgment sustaining the demurrer below should be reversed.

BRISTOL, J., *dissenting.* This case is here on a writ of error to the district court for the Third district and county of Grant. Suit was instituted in the court below for the specific performance of what is claimed in the bill a contract to convey a certain mining claim. A demurrer was interposed to the sufficiency of the bill, which demurrer was sustained by the court below, and the suit dismissed without prejudice. The case having been argued and submitted before this court and a majority thereof having reversed the judgment of the lower court, I hereby dissent therefrom, for the reasons specified in this opinion, in addition to the allegations of the bill in reference therein to what the complainants designate as a memorandum in writing of the contract sought to be performed, a copy of which is attached to the bill and made a part thereof. This writing is as follows:

"Know all men by these presents that I, William Mead, of Hillsborough, Dona Ana county, New Mexico, am hereby held and firmly bound unto Miller and Teal, of Lake Valley, Socorro county, New Mexico, in the sum of ten thousand ($10,000) dollars, lawful money of the United States of America, to be paid to the said Miller and Teal, their executors, administrators, or assigns, for which payment, well and truly to be made, I bind myself, my heirs, executors, and administrators, firmly by these presents.

"Sealed with my seal, and dated the fifteenth day of March, one thousand eight hundred and eighty-one.

"The condition of the above obligation is such that if the abovebounden obligor shall, on the fifteenth day of June, one thousand eight

hundred and eighty-one, make, execute, and deliver unto the said Miller and Teal, or to their assigns, provided that said Miller and Teal, their heirs or assigns, shall, on or before that day, have paid to the said obligor the sum of three thousand and three hundred ($3,300) dollars, lawful money of the United States of America, the price by said parties agreed to be paid therefor, a good and sufficient deed for conveying and assuring to the said Miller and Teal, their heirs, or assigns, free from all incumbrances, all his right, title, and interest, estate, claim, and demand, both in law and equity, as well in possession as in expectancy of, in or to that certain portion, claim, and mining right, title, or property, on a certain vein or lode of rock containing precious metals of gold, silver, and other minerals, and situated in the Lake Valley mining district, county of Grant, Dona Ana, or Socorro, and territory of New Mexico, and described as follows, to-wit: All say one-third ($\frac{1}{3}$) interest in the Columbia mine, of the Lake Valley mining district of Grant, or Socorro, or Dona Ana county, New Mexico, then this obligation to be void, otherwise to remain in full force and virtue.                    WILLIAM MEAD.    [Seal.]
    "Signed, sealed, and delivered in the presence of
        "MARIAN TURNER."

The foregoing instrument in writing does not appear to have been acknowledged by Mr. Mead, the obligor, yet it was, without authority, filed for record, and recorded in the probate clerk's office, March 22, 1881. This instrument in writing is something more than a mere memorandum, as styled in the bill. It must be taken and considered as embracing the actual terms of the transaction between the parties, and must necessarily control the allegations of the bill. Any allegations in the bill that are outside of, or inconsistent with, the terms of this written instrument must be disregarded. There is no latent ambiguity about this writing that can lay the foundation for parol testimony to explain its meaning. The writing itself embodies the entire transaction. And what is its whole meaning and import? As I understand it, it is simply a proposition on Mr. Mead's part, without consideration, either received or promised, to give a three-months' option to buy a mining claim for $3,300. He not having received that sum, or any part of it, nor accepted any promise to pay it, or any part of it, in consideration of executing the option bond, it could not, therefore, become a binding contract until something had been paid and accepted, or promised, and the promise accepted on Mr. Mead's part as a consideration; until such acceptance he was at liberty to withdraw the option. An option contract can be made as binding as any other contract, but a valuable consideration is as necessary to the validity of this kind of a contract as it is to any other. A contract of option to buy a piece of property is quite distinct from a contract of purchase of the same property. The usual consideration of an option contract is a certain sum of money, or

some designated property of value, that is put up as a forfeit in case the proposed purchaser does not conclude to purchase the property constituting the subject of the option.

Can it be contended with any show of reason that the obligees named in this bond were in any way bound to purchase this mining property for the sum named, or any sum whatever? Is it equitable that these obligees shall secure, without consideration, the exclusive privilege of purchasing valuable mining property, keep it tied up, and out of market for months, and finally abandon all idea of purchasing it? After placing themselves in this condition, can they reasonably ask a court of equity to enforce a gratuitous option thus obtained, after the obligor has refused to accept their terms? This species of bond, called mining bonds, are quite well known throughout the several mining states and territories. They are of comparative recent origin. They have been invented in the interest of mining speculators, whereby they hope to acquire an undue advantage over the unwary prospector and miner, free of cost, and for such time as they may discover that the property is of much greater value than supposed, when they will purchase, and if found otherwise as to value, they may refuse either to purchase, or to pay anything for the option,—a scheme, I apprehend, that cannot well commend itself to the favor of a court of equity.

The complainants cannot rightfully claim as innocent purchasers without notice. This option bond was assigned to them on the twenty-first day of May, 1881, by a brief indorsement on the bond. But before this assignment, and less than a month after executing the bond, Mead and his wife, by bargain and sale and deed of conveyance, had conveyed the premises in controversy to the respondent, Crittendon. This deed was executed and duly acknowledged on the twelfth of April, 1881, and duly recorded on the twenty-fifth day of the same month. This conveyance operated as a repudiation on Mead's part of the gratuitous option contained in his bond of the fifteenth of March, 1881, to Miller and Teal; and the same having been recorded prior to the assignment to the complainants, it was notice to them of such repudiation.

It is true that the bill contains allegations that "it was agreed between the said William Mead and the said Miller and Teal, that the price of $3,300 should be paid by the said Miller and Teal, their heirs or assigns, to said William Mead, on or before the fifteenth day of June, 1881," etc. But the said bond of the fifteenth of March, 1881, which must be considered as embodying in its terms the entire transaction between the parties, contains no such agreement. This bond must be regarded as conclusively negativing such allegations. This bond is not signed by Miller and Teal, or by either of them, and it contains no stipulation on their part, or of either of them, to pay any sum of money, or to do or not to do any act whatever to the advantage of Mead or assigns. Had Mead not conveyed to Crittendon

or any one else, so that on the fifteenth of June, 1881, it would have been in his power to execute a good and sufficient deed of conveyance, no action at law even could have been maintained by him against Miller and Teal or their assigns upon tendering a deed and demanding said sum of $3,300, and a refusal on their part to pay it for the simple reason that the bond does not show that they ever promised to pay that or any other sum. For this want of mutuality between the parties there was no such completed contract as equity will enforce by decree of specific performance. *Smith* v. *Reynolds, supra.*

It is contended in this suit that the seal affixed to the bond by Mead to Miller and Teal, imparts a consideration. This is true; but in suits for specific performance a mere seal is not a sufficient showing of the consideration to justify the chancellor in granting a decree to specifically perform. In any action at law where the point was raised, the consideration imparted by a seal would be considered as *prima facie* sufficient. But this rule does not apply to suits in equity for specific performance of contracts, though they be executed under seal. A mere seal may import no other consideration than moral duty and affection, and while that might be considered as sufficient to sustain a deed of conveyance, it is never so regarded for the purpose of compelling a conveyance by a court of equity. Before decreeing specific performance the chancellor must be advised of what the consideration consists, that he may see that the contract sought to be enforced is just, equal, and fair as between the parties. A mere seal is not sufficient. Ad. Eq. 78; 6 Iowa, 279; 6 Mich. 364; 12 Ind. 539; 14 La. Ann. 606; 17 Tex. 397. Upon demurrer for insufficiency to a bill for specific performance, a failure to show a consideration other than that imported by a seal will be fatal to the bill. Upon demurrer, the bill in this class of cases to be sustained must allege all the facts, which, if true, would justify a final decree without further proof.

It is true, as claimed on behalf of plaintiffs in error, that courts of equity will regard the *substance* rather than the form of the contract. To support this view, authorities are cited showing that "if a bond, with a penalty, is made upon condition to convey certain lands upon payment of a certain price, it will be deemed in equity an agreement to convey the land at all events." But that does not meet the objection in this case. Such authorities only go to show that there was no controversy over the *validity* of the bond; but an effort merely to avoid a conveyance by paying the penalty specified in the bond. This course would be a direct acknowledgment of the validity of the contract.

In the case now under consideration there can be no doubt that the bond executed by Mead to Miller and Teal contains a stipulation to convey *at all events;* but the real question is, whether it is not a *nudum pactum*, there being no stipulation on the part of Miller and Teal to pay the price *at all events*. If the price, or any part of

it, at any subsequent time even, had been paid and accepted, then the bond would have become a valid contract to convey, and equity would have enforced it by specific performance. Up to the time of such acceptance, however, Mead had the right to withdraw from and repudiate the gratuitous option. It also would have been a valid contract to convey if Miller and Teal had paid, or promised to pay, anything for the option; or, in other words, if, upon a valuable consideration, they had purchased the exclusive right to purchase the mining interest in controversy, within the time specified, then, upon proof of tender of the price within the designated time, equity would have decreed specific performance. The complainants have not brought themselves within either of these categories. Decrees for specific performances of contracts can never be demanded as an absolute right. Bills for such decrees are always addressed to the sound discretion of the chancellor. Story, Eq. Jur. §§ 742, 749. A refusal to grant any such decree, in effect simply leaves the complainant to his remedy at law.

All the facts and circumstances considered, I am unable to discover wherein there was an abuse of discretion on the part of the lower court in refusing specific performance on the facts stated in the bill, by sustaining the demurrer thereto; and I am still of the opinion that the judgment below ought to have been affirmed.

### NOTE.

EQUITY — SPECIFIC PERFORMANCE — MUTUALITY — CONSIDERATION. The conclusion reached by the majority of the court in the case to which this note is attached is supported by the great weight of American authority. It is now well settled that these optional contracts are capable of being specifically enforced. The question of their mutuality is no longer discussed by the courts. If the contract is itself fair, and supported by a consideration, the holder of the option will be entitled to specific performance, if he elects to accept the offer within the time specified. In Johnston v. Trippe, 33 Fed. Rep. 530, it was decided that one who had secured an option on some lots for a year, in consideration of $50, which was to be applied to the purchase price in case the land was bought, or to be forfeited if it was not, was entitled to a specific performance of the contract to convey, and that it was immaterial, as a matter of defense, that the lots increased greatly in value after the contract of option was made. In *Tennessee*, it has been decided that an option, good for two years, is a binding contract, and that the holder is entitled to a conveyance if he signifies his intention to take the land at any time before the expiration of the option. Bradford v. Foster, 9 S. W. Rep. 195. In *California* and *Alabama*, optional contracts are declared to be specifically enforceable. Morrill v. Everson, (Cal.) 19 Pac. Rep. 190; Moses v. McClain, (Ala.) 2 South. Rep. 741. So in *Indiana*, it is held that a lessee who has an option to purchase the premises at the expiration of his lease may compel a specific performance on the part of the lessor. Herman v. Babcock, 3 N. E. Rep. 142. In *Michigan*, however, it is said that an optional contract will not be specifically enforced; but the case in which this doctrine was announced really went off on another point,—that the contract was within the statute of frauds. Maynard v. Brown, 2 N. W. Rep. 30. A contract to convey, entered into by the husband and wife in a common-law state, where the wife's contracts are invalid, will not be specifically enforced at the suit of the husband and wife; for the contract, not being binding on the wife, cannot be enforced against her, and hence is not mutual. Railway Co. v. Dunlop, (Va.) 10 S. E. Rep. 239.

Where there is an actual contract of sale, signed only by the vendor, and to be consummated within a given time by the performance of the conditions on his part by the vendee, otherwise the earnest money generally paid with such contracts to be forfeited, it is held that the vendee may compel a specific performance, even though he fails to perform the conditions within the time specified; for time is not of the essence of the contract, unless expressly made so, and the want of mutuality is overcome by the action of the vendee in seeking to enforce the contract, so that he then becomes bound. Appeal of Born, (Pa.) 19 Atl. Rep. 337; Austin v. Wacks, (Minn.) 15 N. W. Rep. 409.

The mere fact that a contract is unilateral seems to be no longer an obstacle to its specific enforcement, if it ever was. Thus a unilateral covenant in a deed, that the grantor shall have the right to repurchase the estate after the death of the grantee, will be specifically enforced, though clearly the grantor could not be compelled to repurchase unless he elected to do so. Woodruff v. Woodruff, (N. J.) 16 Atl. Rep. 4. And so a unilateral contract to purchase may be specifically enforced by the vendor. Miller v. Cameron, (N. J.) 15 Atl. Rep. 842.

Although it is frequently said that in order to entitle one to the relief of specific performance the contract must be mutual in its inception, yet this is not always the case, for it has been held that, where a father agreed to give his daughter a tract of land if she and her husband would live on it, he would be compelled to convey after the daughter and her husband had lived there, in pursuance of the agreement, for 15 years, though the daughter could not be compelled to continue to live there, nor could she have been compelled to live there at all when the contract was entered into. Welch v. Whelpley, (Mich.) 28 N. W. Rep. 744. A railway company which has erected its depot at a particular place, in pursuance of a contract with the owner of the land to convey it in consideration of the maintenance of a depot thereon, and of $1,000, may compel a specific performance of the contract. Railway Co. v. Cox, (Iowa,) 41 N. W. Rep. 24.

Although the contract may be legal, and held to be binding in law, yet, if it appears in a suit for specific performance that there was a *bona fide* misapprehension on the part of one of the parties, which yet did not amount to such a mistake as would entitle the party to positive relief had the contract been carried out, specific performance will not be decreed. Hamlin v. Wistar, (Minn.) 18 N. W. Rep. 145; Burkhalter v. Jones, (Kan.) 3 Pac. Rep. 559.