(36 South. 134.)

No. 14,630.

### SIGUR v. BURGUIERES' EX'RS.*

(Feb. 1, 1904.)

#### PAYMENT—EVIDENCE.

1. The character, temperament, and habits of two litigants, as also the surrounding circumstances, considered, it may be more probable that one has forgotten a debt due or to become due him by the other, than that the other should have paid it and have preserved no record or memoranda showing how, when, where, or to whom such payment was or might have been made.

*Rehearing denied March 14, 1904.

2. The law requires something more cogent to prove the payment of a debt than mere probability.

3. Where, by the unambiguous terms of a contract, the rights of a party in a particular respect are to be governed by a specified condition, with reference to which alone he is called on to regulate his conduct, he cannot, at the option of the other contracting party, be affected by another and different condition to which he has never assented, even though, if it had been so agreed, the one condition might have served the purpose of the other.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by J. Oscar Sigur against the executors of J. M. Burguieres. Judgment for defendants, and plaintiff appeals. Reversed.

Donelson, Caffery & Son, F. Rivers Richardson, and Placide P. Sigur, for appellant. Philip H. Mentz and Saunders & Gurley, for appellees.

### Statement of the Case.

MONROE, J. In October, 1885, the plaintiff, by notarial act, sold to Patrick Scally a tract of land in the parish of St. Mary, the consideration being $10,000, of which Scally paid $5,000 in cash, and for the balance gave two notes of $2,500 each, of even date with the sale, the one payable October 8, 1886, and the other, to quote the language of the act of sale, "at the majority of Jean Marie Aruns Callery and when he shall ratify the sale herein made." In 1888 Scally sold the land thus acquired to J. M. Burguieres, who, as part of the price, assumed and promised to pay the note last above mentioned, which bears interest at the rate of 8 per cent. per annum from maturity.

The plaintiff now alleges that before its maturity he became indebted to Burguieres, who was then a commission merchant in New Orleans, and that he pledged the note to him as security, and that, although his indebtedness was thereafter discharged, it has never been returned or accounted for. He further alleges that J. M. A. Callery, by notarial act of September 24, 1900, ratified the sale from petitioner to Scally; that Burguieres is dead, and that his succession is being administered by his executors; and he prays that they be cited, and that he have judgment for $2,500, with interest and attorney's fees.

The executors admit the assumpsit of the note by their decedent, but deny that it was ever pledged to him by the plaintiff. They allege that plaintiff acquired the property, in part payment of the price of which the notes were given, in a partition proceeding to which J. M. A. Callery, then a minor, was a party, and that Callery, on December 28, 1888, ratified the partition, and thereby, in effect, ratified the sale by plaintiff to Scally; that the note thereupon matured, and was paid by their decedent, "and, if not paid, that it is prescribed." They further allege that plaintiff made no claim with respect to said note until after the death of J. M. Burguieres, and then only when he learned that respondents were unable to find it. They therefore pray that this suit be dismissed.

The facts established by the evidence in the record are as follows: In December, 1884, the plaintiff, by an act of partition between certain members of the Callery family, Mrs. Edward Sigur, and himself, was recognized as the owner of one-half of the Richland Plantation, said to contain about 1,630 acres, and of the movable property thereon. In October of that year he sold 300 acres of the land so acquired, upon the terms as stated in plaintiff's petition, to Patrick Scally; in March, 1887, he mortgaged his remaining interest in said land for $2,200 to J. M. Burguieres; in April, 1889, he mortgaged the same property for $2,500 to D. R. Calder; in January, 1890, he mortgaged it for $2,700 to J. B. Brown; and in February, 1890, he mortgaged it for $6,350 to Mrs. Allen. The parties to these transactions dispensed with certificates from the mortgage office, but the evidence shows that the mortgage to Mrs. Allen was granted to secure a loan of actual cash obtained from a lady whose legal adviser testifies that he was particular to see that it was first in rank, from which it follows either that the prior mortgages, including that of Burguieres, had already been satisfied, or else that they were satisfied from the proceeds of the loan from Mrs. Allen. In January, 1891, the plaintiff mortgaged the property as security for advances to be made to the extent of $3,300 to Mr. Block, the certificate being as usual dispensed with, and in February, 1892, J. A. O'Neil obtained judgment against him for two sums aggregating $257.84, with interest and attorney's fees,

and Mrs. Rombach obtained judgment against him for $120.05 and interest. The plaintiff then, on May 11th, sold to Burguieres (about) 265 acres of his land for $2,000, which amount was retained by Burguieres, who paid the debts due by the plaintiff to his other creditors, and made other advances, as follows:

| | | |
|---|---|---|
| May 11th. | Paid balance due M. Block | $2,615 41 |
| May 13th. | Paid balance due Mrs. Allen | 5,559 00 |
| May 13th. | Paid to P. H. Mentz, attorney's fee | 50 00 |
| May 14th. | Paid Mrs. Rombach (judgment) | 138 90 |
| May 17th. | Paid J. A. O'Neil (judgment) | 316 20 |
| | 10 sacks of peas | 30 19 |
| | Freight on same | 2 64 |
| | | $8,712 34 |

Without calculating the interest, this arrangement brought plaintiff in debt to Burguieres in the sum of $6,712.34, and made the latter his sole creditor, until March 15, 1892, when the plaintiff, in order to secure the debt, made a paper sale to Burguieres of his remaining land, together with the buildings, mules, etc., for $7,000, and Burguieres, upon the same day, sold the property back to him at the same price, represented by three notes of $2,233.33 each, payable in one, two, and three years, and secured as usual. Thereafter, in February, 1894, plaintiff sold the property to Philip Bodenheimer and his sister for $11,860, of which, according to the recitals of the act, the purchasers paid $1,360 in cash, and for the balance gave their note for $2,950 and assumed the three notes due by their vendor to Burguieres. It will be observed that $1,360 plus $2,950 plus $7,000 is equal to $11,310, and not $11,860, and the difference of $550 is not accounted for. It is also a fact, which develops later, that the note for $2,950, as described in the act, in some way turns out, when paid to Sigur, to be a note for $2,940. Nevertheless, the result of the sale to Bodenheimer was that Burguieres was paid all that Sigur owed him, and, save that he subsequently invested some of his money in the Bodenheimer note of $2,950 (or $2,940) about the time of its maturity, he and Sigur appear to have had no further dealings together.

Reverting to the subject of the present litigation, Sigur testifies that when, in 1887, he gave Burguieres the mortgage for $2,200, he offered him the note in question as additional security, and that it was turned over to him by his (Sigur's) legal adviser, then

the partner of the present counsel for the defendants, with whom it had been deposited for safe-keeping, and that he (Sigur) thereafter forgot its existence. The gentleman to whom he refers, being examined as a witness, was unable to remember the circumstance narrated by the plaintiff, and for a while seemed to think it improbable that the latter had at any time left any money, notes, or securities in his possession or in that of his firm. At the close of his examination, however, he said: "Now, I do remember that Mr. Block had some kind of a prior claim, or mortgage, or judgment, against Mr. Sigur, which, I think, the purchaser of the property required that we should pay off, * * * and some money was left with us, or some note, or something, for the purpose of paying off those prior incumbrances." The then partner of the witness (the present counsel for the defendant) is quite positive that the note sued on was not in the possession of his firm or of his partner, as stated by the plaintiff, though he testifies that he represented Burguieres in paying plaintiff's debts in 1892, and that the money used for that purpose passed through his hands. Upon the other hand, E. J. Callery testifies that in 1887 Burguieres told him that he had the note in question and showed it to him, and that, shortly before his death, Burguieres inquired about Sigur, and, being told that the latter was very poor and was working on the public roads, spoke of some money that he would get, but refused to go into particulars. Beyond this, it appears that Burguieres died in September, 1899, and that his son and executor at once set about canceling a number of old mortgages which rested on his property, and the notes representing which were among the decedent's effects. Finding the mortgage securing the Scally note uncanceled, and not finding the note, he wrote several letters of inquiry, and, among them, one to J. M. A. Callery, the party at whose majority, followed by his ratification of the sale to Scally, the note was to mature, reading as follows:

"New Orleans, October 28, 1899.

"Jean Marie Callery, Glencoe, La.—

"Dear Sir: When father bought the Florence Plantation from Mr. Scally, he gave him several notes, among which was one for $2500, which was made payable when you became of age. From this, it might appear that the note was made payable in your favor. If you do not know anything about this matter, please look into it as it might be to your interest.

"Yours truly, Estate J. M. Burguieres,

"Per J. E. Burguieres, Executor."

He also wrote to Mr. Bonvillain, who, having been examined under commission as a witness for the defense, was interrogated, and answered as follows:

"Int. 4: Did you ever hear from any one representing the estate of J. M. Burguieres that a promissory note secured by mortgage on his Florence Plantation was lost or mislaid? If you did, how soon was this after the death of Jules M. Burguieres? From whom did you learn this? Did you learn this through a letter or conversation? If through a letter, please annex the letter, or state whether you can find it, or what has become of it?"

"To the fourth interrogatory: About two weeks after the death of J. M. Burguieres I received a letter from Joseph E. Burguieres advising me that a certain promissory note had been lost, which is the note mentioned. The letter from J. E. Burguieres has been lost or mislaid. Int. 5. If you have said that you learned of a note being lost or mislaid, then state by whom that note was due, and the amount of the note, and state why the party informing you of its loss wrote to you, and what he asked you to ascertain for him? To the fifth interrogatory: The amount of the note was $2,500, with interest, being a mortgage note bearing on Florence Plantation. He requested me to ascertain from J. O. Sigur who was the rightful owner of this note, or who was entitled to hold it by law."

From other evidence it appears that, although Mr. Burguieres was a commission merchant, a banker, and a man of affairs generally, who made a business of lending money, and although Sigur testifies that for several years after the mortgage transaction of 1887 he borrowed from him repeatedly, his books show no account with Sigur, and no account was ever rendered to that gentleman. The defendants have filed in evidence the transcript of a page, or a part of a page, from one of the decedent's books, and, upon a traverse to a subpoena duces tecum calling

upon them to produce "all the commercial books or private accounts of Jules M. Burguieres, deceased, from January, 1887, to the date of the death of the said Burguieres, and all papers, promissory notes, or accounts relative to any and all business transactions between the plaintiff and the said Burguieres," one of them has testified that they could find nothing else relating to the business between the decedent and the plaintiff. The transcript referred to reads as follows:

**Joseph Oscar Sigur.**

| | | Dr. | Cr. |
|---|---|---|---|
| Page 118. | | | |
| 1892. | | | |
| Jany. 2, | To paid Mrs. Allen for him...... | $5,559 00 | |
| Jany. 2, | " " Foster & Mentz fees...... | 50 00 | |
| " 2, | " " M. Block ...... | 2,615 41 | |
| " 2, | " " O'Neil...... | 316 20 | |
| " 2, | " " Mrs. Rombach ...... | 138 90 | |
| " 2, | By lands bought ...... | | 8679 51  (pencil) 6679 50 |
| " 2, | To bill ten sacks peas...... | 30 19 | 2000 00  (pencil) |
| | Freight on same...... | 2 64 | |
| | | $8,712 34 | |
| Int. | | 8,712 34 | |
| | | 2,000 00 | |
| | | 6,712 34 | |
| | | 536 96 | |
| 2 mo. int. | | 7,249 30 | |
| | | 90 00 | |
| | | 7,339 30 | |
| | | 400 00 | |
| By 400 | | 6,989 30 | |
| | | 2 00 | |
| | | 6,941 30 | |

It will be observed that the foregoing entries, in so far as they are dated at all, appear to have been made January 2, 1892. The checks with which the amounts represented by them were paid are, however, in the record, and are dated May 11, 13, 14, and 17, 1892, respectively. The entries were therefore not made at the dates of the transactions which they purport to represent, and, as the date at which they appear to have been made is an impossible one, there is nothing to show when they were made, and, as made, they do not attain the status or dignity of an account. It was stated by the executor, in the course of the trial

in the district court, that there might be an account, somewhere, in the name of Scally, which would throw light upon the subject-matter of this litigation, but, if any such account was found, it was not produced, although the counsel for the plaintiff appear to have been willing, and to be willing now, that anything discovered in the books should go in evidence.

It is shown that the plaintiff was so reckless in the management of his affairs that within a few years he allowed a fair patrimony to slip through his hands, and was reduced to the necessity of maintaining himself and his family by working as a laborer on the public roads. Upon the other hand, we were informed by the counsel for the defendants, in the course of his oral argument, that the late J. M. Burguieres was a most competent and successful business man, and that, whilst the plaintiff grew poorer and poorer, he grew richer and richer—this, as we understand, by way of showing that it was not likely that the one should have allowed the other to withhold so considerable a sum as $2,500 which he had the right to demand. There is, however, nothing else in the record to support the defendants' plea of payment.

It is shown that in December, 1888, J. M. A. Callery, by notarial act, ratified a certain partition, said to have been effected between the heirs of Edward Sigur, by act before George B. Sheppard, notary, December 24, 1884; but, as the only act of partition which we find in the record bears date December 27, 1885, it is probable that there is error in the date mentioned in the ratification. It is also shown that in the autumn of 1899, after the attention of the plaintiff had been called to the matter out of which this suit has arisen, he requested J. M. A. Callery to ratify the sale from him (plaintiff) to Scally, in order that the note here sued on should become exigible, and that an act of ratification was prepared, but that Callery postponed action on the ground that he needed more information, and the act, as thus prepared, was not signed. Upon September 24, 1900, however, having presumably investigated the matter to his satisfaction, he signed an act, formally ratifying the sale, and relinquishing any rights that he might have had

SIGUR v. BURGUIERES' EX'RS.

in the property sold in favor of Patrick Scally and his assigns, and shortly thereafter this suit was filed.

## Opinion.

Ordinarily, it would seem improbable that a man should forget the existence of a note of $2,500 of which he is the payee, but the plaintiff in this case has been exceptionally careless or incompetent in the management of his affairs, as is shown, not only by the evidence in this record, but as appears from the case of Brian v. Bonvillain (recently decided by this court) 35 South. 632, ante, p. 441, in which it was found that either the partition which is referred to in this case, or some other, was effected in such a way that he lost, and there was assigned to another person, an undivided one-ninth interest, of which he was unquestionably the owner, in a valuable plantation. In fact, he seems in those days to have had more money than he well knew what to do with, and it appears to us, considering his character, temperament, and habits, much more likely that he should have forgotten the $2,500, which he did not then need, and which was to become due upon the happening of an event in the future, than that Burguieres, a methodical and successful commission merchant and banker, should have paid that amount and have preserved no record or memorandum showing or suggesting how, when, where, or to whom such payment was or might have been made. Nor do we find the argument a convincing one that, as the plaintiff became poorer and Burguieres richer, the improbability of the plaintiff's failing to demand the money that was due him became so great as of itself to justify the assumption that such demand was made and complied with. The abstract proposition that a poor man is less likely to forget that $2,500 is due him than a rich man remains to be demonstrated, but that a man who is capable of such a lapse of memory is likely to become poor, whilst another, who is incapable in that respect, may grow rich, needs no demonstration. In any event, the law requires something more cogent to prove the payment of money than a mere probability, and, as we find something less than that in this record, we conclude that the payment set up by the defendant is not established.

In support of the plea of prescription, the counsel for defendants insist that the note in question matured upon the ratification by Callery, in 1888, of the partition, and that, as Burguieres never held said note in pledge, the prescription which then began to run has never been interrupted. The only testimony. in the record which tends to show that the note ever found its way into Burguieres' possession is that offered for the purpose of showing that it was pledged to him by the plaintiff; hence, if the pledge be not shown, neither is the possession, and Burguieres' failure to obtain possession of the note would afford additional support for the conclusion, already reached, that he did not pay it. Conceding, arguendo, that the note has never been in his possession, by pledge or otherwise, the question remains, is the present action prescribed? "Actions on all promissory notes * * * are prescribed by five years, reckoning from the day on which the engagements were payable." Civ. Code, art. 3540. It is conceded that, according to its terms, the note was made payable "at the majority of Jean Marie Aruns Callery *and* when he shall ratify the sale," made by the plaintiff to Patrick Scally, October 8, 1885. It is also conceded that, in order that the note should become payable, it was as necessary that Callery should ratify the sale as that he should retain his majority; and it is shown beyond dispute that, although Callery attained his majority in August, 1888, he did not ratify the sale until September 24, 1900. It is said, however, that his ratification in 1888 of the act of partition, whereby the plaintiff acquired the property which was the subject of the sale to Scally, was equivalent to a ratification of the sale to Scally. But we have no means of knowing that such was the case. Non constat but that Callery had, or was supposed to have had, an interest adverse to that of the plaintiff in the share of the property which the plaintiff otherwise rightfully acquired as the result of the partition. Apart from that, by the unambiguous terms of his contract, the plaintiff's rights as to the maturity of the note in question. were to be governed by a particular, specified condition, with reference to which alone he was called on to regulate his conduct, and he cannot, at the option of the other contracting party, be af-

fected by another and different condition to which he has never assented, even although, if it had been so agreed, the one condition might have served the purpose of the other. Civ. Code, art. 1945; McConnell v. City of New Orleans, 35 La. Ann. 273; Satterfield v. Keller, 14 La. Ann. 606; Gueno et al. v. Soumastre, 1 La. Ann. 44; A. & E. Ency. of Law (2d Ed.) vol. 6, p. 504; Id. vol. 7, p. 118. Our conclusion, then, is that the note sued on matured September 24, 1900, and, suit thereon having been brought within five years, that the plea of prescription is not good.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff, Joseph Oscar Sigur, and against the defendant the succession of Jules M. Burguieres, in the principal sum of $2,500, with interest thereon at the rate of 8 per cent. per annum from September 24, 1900, until paid, and with 5 per cent. as attorney's fees upon the aggregate amount of said principal and interest, the defendants to pay all costs.