### PENNELL and wife *vs.* HINMAN and others.

Where a junior judgment creditor sells the real estate of the judgment debtor, upon his judgment, and becomes the purchaser thereof, and receives a deed from the sheriff, and afterwards pays to the holder of a prior judgment—who has also sold the premises upon his judgment, and bid the same in—the amount of the prior judgment, and takes an assignment of the sheriff's certificate given upon the latter sale, the question whether the transaction between the parties amounts to a *purchase of the sheriff's certificate*, or to a *redemption under the prior judgment*, is one of fact, depending on the intention of the parties.

Where the chain of documentary evidence proving a valid title in the junior judgment creditor under the prior judgment, is complete, the burthen of disproving such title, and of establishing the fact that what purports to have been a *purchase* of the sheriff's certificate was in truth a *redemption*, rests upon those assailing such title.

The doctrine of *estoppels in pais* should not be extended, in order to accomplish a fraudulent object.

A party will not be estopped by a declaration made to a mere stranger, where it does not appear that such declaration was ever communicated by him to the party setting up the estoppel, so as to influence his conduct.

IN EQUITY. Bill to foreclose a mortgage. The facts are stated in the opinion of the court.

*Geo. F. Comstock*, for the plaintiffs.

*John Ruger*, for the defendants.

*By the Court*, GRIDLEY, J. The bill in this cause was filed in the late court of chancery, before the vice chancellor of the seventh circuit, to foreclose a mortgage executed by Sampson Jaquith to Henry W. Schroeppel, for the purchase price of lot No. 65 in the 16th township of Scriba's patent. The conveyance to Jaquith, and the mortgage executed to Schroeppel, bore date on the 13th of April, 1839, and the mortgage, with the collateral bond, was assigned to the plaintiffs on the 16th of July, 1841. Prior to the conveyance by Schroeppel to Jaquith, two judgments were recovered against the former, both of which

became liens on the premises conveyed; one in favor of the defendant Hinman, docketed on the 7th of January, 1839, and the other in favor of Richard S. Corning, docketed on the 15th of October, 1838. Hinman sold on his judgment and received a sheriff's deed of the premises. Corning also sold on his judgment, and became the purchaser of the lot in question, with several other lots in the same tract. It also appears that S. A. Goodwin recovered a judgment against Schroeppel on the 24th of December, 1840, and that Corning purchased the premises on a sale made under this judgment. Hinman claims under his own deed; and also under a deed executed by the sheriff to him as the assignee of the certificate under Corning's judgment. This title he has conveyed to the defendant Joseph Jaquith, and he is the holder of a mortgage for the purchase money.

The plaintiffs insist that Hinman's judgment had been paid, and that his deed for that reason was fraudulent and void. They also insist that the transaction between Hinman and Corning was not a purchase of the sheriff's certificate; but a redemption under Corning's judgment; which was void for the reason that Hinman had no such interest as entitled him to redeem. Upon both those issues much testimony has been taken. It will be necessary, however, to examine but a single point involved in these issues. If Hinman *purchased* Corning's certificate, he has a perfect title under the oldest lien on the premises; and must of necessity prevail. The important question therefore is, whether Hinman acquired his right to Corning's title, as a *purchaser*, or as a *redeeming owner* under his deed. The written assignment by Corning, bearing date on the 21st of August, 1845, witnessed by Thos. T. Davis, is evidence of a purchase. The chain of documentary evidence, proving a valid title in Hinman, under the Corning judgment, is complete. The burden of disproving this, and of establishing the fact that what purports to have been a purchase of Corning's certificate of sale was in truth a redemption, rests upon the plaintiffs. The transaction, whether it was a purchase or a redemption, took place between Mr. Davis, as the agent of Hinman, on the one part, and Corning on the other, without a witness. Mr. Corning has

not been called to testify by either party; so that Davis is the only witness competent to speak on this point from positive knowledge, whose testimony throws any light on the case. The hypothesis which the counsel of the plaintiffs sought to establish, was that Davis, on the 14th of August, as the agent of Hinman, paid Corning the sum of $112,20, for the purpose of redeeming under his sale, and at the same time performed the other acts which by law were necessary to render the redemption perfect. That the act of redemption having been completed on the 14th of the month, the rights of the parties became fixed, so as to leave no power in Corning to assign, or in Hinman to purchase the sheriff's certificate. That the formal assignment, therefore, which bears date on the 21st of August, was utterly void, having been fraudulently contrived and executed, as an after thought, for the purpose of creating false evidence of a sale, at a time when no such contract either was, or could be made, between the parties. With the view of proving this hypothesis to be true, the plaintiffs have produced certain correspondence between Mr. Hinman and one Nathan Soule, who was acting as an assignee of Schroeppel for the benefit of creditors, in which the former repeatedly proposed, and finally announced his decided intention to redeem the lot in question, and also a correspondence between Hinman and his agent Davis, by which Davis was explicitly instructed to make the redemption. All this rendered it highly probable that the transaction was in fact a redemption. The plaintiffs, however, go further, and *call Davis himself as a witness*, and it is upon his testimony that the question must be decided. He admits that he was instructed in the letters before mentioned, to make the redemption, and that he produced to Corning on the 14th of August the deed which Hinman had taken of the sheriff on the purchase under his judgment, and that he paid him the sum of $112,20. But he also says that he had *received other instructions from Hinman*, either verbal or written, by which he was authorized to purchase the certificate instead of redeeming under Corning's judgment. He testifies that he *did not redeem* this lot on the 14th of August, or at any other time; that he did not on that

day *make an absolute payment* and appropriation of the $112,-20; but that he left the same with Corning "*without making an application of it, until he could hear from Hinman, and that he had a right to withdraw the money.*" Mr. Davis stated further, that Corning desired him to purchase also certificates for certain other lots which he had bid off on the sale under his judgment against Schroeppel, and that the negotiation was left open until he could get authority from Hinman to purchase the other certificates. Hinman finally consented, and on the 26th of August a further purchase was made, and an assignment of other certificates was executed by Corning to Hinman. The witness then proceeds in these words, " On the 14th of August it was concluded between Corning and me that Hinman was to be entitled to the certificates for lot 65 and the east half of 13, if I required it. I told Corning that I would leave the matter in that way, so that if Hinman concluded to take the whole he might do so, or in case Soule should comply with the proposition made that he might have the opportunity of doing so; *but the assignment of the certificates for lots 65 and 13 was to be executed in case I required it. I did require it, and the arrangements were accordingly made for 65 and the east half of lot 13, August 21, 1845.* Hinman never had any thing to do with Corning personally in regard to this matter, to my knowledge." In a subsequent part of his testimony the witness denies all knowledge of any redemption, and testifies positively that he " *did not pay the money under any other arrangement than that Hinman should have an assignment of the certificates.* This relates to lot 65 and the east half of 13." Now when it is considered that this witness was called by the plaintiffs themselves, it seems to me that there is no escape from the conclusive character of his testimony. It is true that the missing letters mentioned by Mr. Davis, especially the letter which he thinks contained the instructions to purchase the certificates, and the one addressed by him to Hinman immediately after the transaction of the 14th of August, are not produced. But these letters were all sent to Utica to enable Mr. Thos. E. Clarke to draft the answer of Mr. Hinman, and were never returned to

the witness. It was alledged, and offered to be proved, that they were lost; but the plaintiffs' counsel declined receiving the oath of Mr. Hinman on that point. It is also true, that in the protracted and searching examination of Mr. Davis, it is more than probable he was mistaken in relation to some of the less important particulars concerning which he was questioned. And it may also be mentioned, in this connection, that Mr. Soule testifies that soon after the 14th of August, Davis informed him that Hinman had redeemed the lot under consideration, while Mr. Davis thinks he did not use the word redeemed, but gave him to understand that he had arranged the matter with Corning in relation to that lot. The memory of any person as to the particular word employed in a casual conversation may well be doubted, unless the witness had some especial reason to observe and remember the exact word. Mr. Soule may be right, but it does not appear that, at the time of the conversation, he contemplated the possibility of Hinman's obtaining Corning's title by any other method than a redemption; and if that were so, any analogous expression would convey to his mind the idea of redemption. At all events, the remark of Mr. Davis does not amount to proof of the *fact* of redemption; nor do I think it can be used by the plaintiffs to affect the credit of their own witness. In truth, the counsel of the plaintiffs does not insist that the plaintiffs can impeach Mr. Davis; on the contrary he disclaims the idea of calling in question his veracity. He professes to entertain the highest confidence in his integrity; but he believes that he is laboring under an honest though mistaken belief that he made a purchase instead of a redemption of Corning's title. Now we think that there are insurmountable difficulties in the way of this hypothesis. In the first place, the witness adheres to his first statement concerning the purchase, after his attention had been called to all the circumstances relied on to prove that he was mistaken. In the next place he *knows* how the fact really was. He was a party to the act, and can not be mistaken as to its character. If he had redeemed lot 65, on the 14th of August, and procured a void assignment to be executed to his principal on the 21st of the same month,

Pennell v. Hinman.

he must have done it with a fraudulent intent and a corrupt motive. It is hardly necessary to say that a transaction of this character could not be forgotten by him who perpetrated it. Mr. Davis therefore was not mistaken. He knew whether, as the agent of the defendant, he purchased the certificate of lot No. 65 or not. He has solemnly sworn that he did. And his testimony must be regarded as fatal to the plaintiffs. There was an obvious reason why Hinman, and Davis as his agent, should have allowed the mistaken belief to be entertained that he was about to redeem instead of purchasing the certificate; and this affords a satisfactory solution of the whole difficulty.

A suggestion was made, though it was but slightly dwelt upon in the argument, that Mr. Hinman's letter to Mr. Soule, in which he stated that he should redeem lot 65, should in equity estop him from setting up a purchase of the certificate instead of a redemption. If any person who had a right to redeem, omitted to do so, relying on the supposed invalidity of Hinman's redemption of Corning's judgment, it must have been with the view that the Corning judgment should be satisfied with Hinman's money, but for the benefit of himself. We do not think that the doctrine of estoppel should be *extended* to accomplish such an object. The assurance which is relied on as an estoppel, was made to Mr. Soule. He in no sense represented these plaintiffs, nor does it appear that they were ever informed by Soule of the facts that are supposed to estop the defendant from setting up his defence under Corning's judgment. Soule was the mere assignee of Schroeppel, whose duty consisted in appropriating the effects assigned to him to the payment of Schroeppel's debts. He was, so far as the question of estoppel is concerned, a stranger, and whatever remarks or declarations Hinman may have made to him, they could not have any influence upon the conduct of the plaintiffs, and they can not therefore avail themselves of these declarations to defeat any defence which Hinman may have been able to establish. (*See* 8 *Wend.* 483; 3 *Hill,* 221, 2; 2 *Denio,* 621.)

The decree will declare that the title derived by Hinman under the Corning judgment is prior and superior to that conveyed by the deed of Schroeppel to S. Jaquith, and will direct the bill to be dismissed with costs.

Saratoga General Term, January, 1850. *Paige, Willard, and Hand,* Justices.