## T. DWIGHT WALKER
### *v.*
### JOHN DEMENT.

1. WITNESS — *competency — when to object.* If it be alleged that a witness, whose deposition has been taken in a suit in chancery, is incompetent, on the ground of interest, the objection cannot be made for the first time in the appellate court. It should be made before the hearing, in the court below, by motion to suppress the deposition.

2. SAME — *whether a party in chancery is a competent witness.* One of several defendants in chancery is a competent witness against his co-defendants, even if he has an interest in the event of the suit, if it be not against the party whose interests are sought to be prejudiced by his testimony.

3. CONTRACT — *what may be the subject of contract — giving a preference to the last of a series of notes secured by mortgage.* It is competent for the holder of several notes, falling due at different times, which are secured by mortgage, in transferring those last maturing, to stipulate with the assignee, that he shall hold a lien on the mortgaged premises for the security of the notes so transferred, prior to that retained for the security of the notes first maturing. Such a contract will be binding as between the parties, and all persons having notice thereof.

4. ASSIGNEE OF NOTES — *when chargeable with notice of prior equities — and when subject thereto.* While the purchaser of a note, before maturity, without notice, will be protected against all defenses to the note, still, if it is secured by mortgage, or other collateral security, the assignment will not cut off prior equities against the mortgage or collateral fund, although such equities be secret and latent.

5. So, where the holder of several notes maturing at different times, which are secured by mortgage, transfers those last maturing, under an agreement

with the assignee, that he shall hold a preferred lien upon the mortgaged premises for the security of the notes thus assigned, as against the notes first maturing, which are retained by the mortgagee, a subsequent purchaser of the notes first maturing will be chargeable with notice of that agreement, and will hold the notes so purchased by him subject to the prior equity of the first assignee, to have his notes first satisfied out of the mortgaged premises.

6. And especially is this the case, where the subsequent purchaser of the notes first maturing obtained a mere equitable title to them; he would then be bound to know that they were subject to all equities existing as to the fund relied upon for their security, at the time he purchased them. A person dealing in equitable claims to paper, and equitable securities for its payment, should inquire of the maker, and in case there are several notes thus secured, and only a portion of them is offered, he should inquire of the payee whether the others have been sold with a preferred lien upon the security.

APPEAL from the Circuit Court of Winnebago county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The opinion of the court contains a statement of the case.

Mr. EMERY A. STORRS, for the appellant.

Mr. JAMES K. EDSALL, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This case was before the court at the April Term, 1864, where the decree of the court below was affirmed. A petition for a rehearing was afterward filed, and, from the able and forcible arguments presented in the petition, we were induced to apprehend that we might have mistaken the law on the previous hearing; and, that we might give more mature reflection and further examination to the legal propositions involved, a rehearing was granted. A re-argument has been had, and, after the most careful consideration of the case, and the most mature reflection we have been able to give it, we are impelled to arrive at the conclusion first announced.

To a proper understanding of the case it is necessary that a short statement of the facts should be presented. It appears that one Collins and his wife, on the 10th day of April, 1857, made

18 — 42D ILL.

and delivered to W. H. Godfrey four notes of that date, payable to his order, — one for $1,050 payable September 5, 1857; one for $1,450 payable March 5, 1858; one payable March 5, 1859, for $1,350, and one for $2,750 payable March 5, 1860; and, to secure the payment of these several notes, Collins and wife, at the same time, executed and delivered to Godfrey a mortgage containing a power of sale upon the property described in the bill. That afterward, on the 13th of May, 1857, Heaton, while negotiating to sell to Charles Godfrey, the father of the mortgagee, certain water power and lots in Dixon, applied to appellee to purchase of him an interest in other lots near to this water power, that he might be able to sell it to Godfrey. That Heaton thereupon agreed to pay appellee for such interest, with two of the notes executed by Collins last falling due, all of which notes Heaton was to acquire by the arrangement with Godfrey, as a part of the consideration for the lots and water power which Heaton was then negotiating to sell to Charles Godfrey.

Heaton proposed to appellee to procure the notes, and to give him the two last maturing, and pay them to him for the undivided interest in his lands and lots adjacent to the water power he was offering to sell to Godfrey. The trade was consummated, and appellee conveyed to Heaton, who also conveyed this as well as the other property to Godfrey. The price paid by Heaton to appellee was $4,050. When Heaton conveyed to Godfrey, he received the Collins notes, and the two last falling due he transferred to appellee, agreeing with him, at the time of the transfer, that he should have the first and full benefit of the mortgage on the land, executed by Collins and wife to secure the notes which he then delivered to appellee. Afterward, on the 26th of June, 1857, William H. Godfrey put his name to an assignment written by Heaton on the back of the mortgage, by which he transferred and assigned the entire mortgage, together with all his interest in the land described in it, to appellee, who on the same day caused the mortgage and assignment to be recorded in the proper office.

Soon after the transfer of the notes to appellee, Heaton sold

and delivered to appellant, Walker, the other two first matur-
ing, but they were not then indorsed by the payee, Godfrey.
One of which for $1,050 was subsequently paid by some ar-
rangement with Heaton. The other note for $1,450, was, after
its sale to appellant, and long after its maturity, assigned with-
out recourse by Godfrey to Walker, although he was the
equitable owner by purchase from Heaton a short time after
Heaton received it of Godfrey.

After this note fell due, Godfrey, the mortgagee, at the
instance of Walker, proceeded to sell the mortgaged premises to
satisfy the note. He sold the property to one Wilty, and there-
upon appellee filed a bill and supplemental bill setting forth
these facts, and making Wilty a defendant, charging him with
notice of appellee's equities, and with acting as the agent of
Walker, in making the purchase and using his money in pay-
ment of the lands struck off to him, all of which was admitted
by Wilty. The prayer of the original and amended bill was for
an injunction against Godfrey, Walker and others, to restrain
them from selling the lands for the purpose of satisfying the
note held by Walker, and that the sale to Wilty might be set
aside, and the mortgage be foreclosed, the premises sold, and
the proceeds be applied in discharge of the note held by appel-
lee. The court below passed a decree in accordance with the
prayer of the bills, and the case is brought to this court by
appeal.

The two material questions presented by this record are,
was Heaton a competent witness to prove the contract between
him and appellee, that he should have the first equity? and,
second, was it competent for Heaton to give this preference to
appellee? According to the reported decisions of this court,
the first of these questions cannot be raised in this court for
the first time. It should have been before the hearing by
motion to suppress Heaton's deposition. *Mozier* v. *Knox Col-
lege,* 32 Ill. 155, and the cases there cited. It was also urged
that he was a defendant and was therefore incompetent. It
appears that he was not made a defendant until after his depo-
sition was taken, and only to the supplemental bill, which was

confessed as to him. Had he, however, been a defendant to the original or amended bill, he still might have been examined as a witness against his co-defendants, even if he had an interest in the event of the suit, if not against the party whose interests are sought to be prejudiced by his testimony. *Dyer* v. *Morton et al.*, 4 Scam. 150. But the objection on the ground of interest was not made at the proper time, and cannot therefore be entertained. Had the question been raised at the proper time, a release could have been executed and his deposition subsequently taken.

As to the other question, there has been much discussion, where several notes falling due at different times are secured by a mortgage, whether the mortgagee can legally stipulate, with an assignee of a part, that he shall have a preferred lien on the security, over the assignees of the other notes. It now seems to be settled that he may, and such a stipulation will be binding as between the parties and all persons having notice. It is a matter of contract, lawful in itself, contravening no principle of law or public policy. *Langdon* v. *Kieth*, 9 Vermont, 229; *McNay* v. *Bloodgood*, 9 Porter (Ala.) 547; *Ewing* v. *Arthur*, 1 Humphrey (Tenn.) 537; *Bryant* v. *Damon*, 6 Gray (Mass.) 567; *Bank of England* v. *Tarlton*, 23 Mississippi, 173; *Trustees of Jefferson College* v. *Prentiss*, 29 id. 50; *Moore* v. *Ware*, 39 Maine, 498; *Van Rensselear* v. *Stafford*, 1 Hopkins Ch. (N. Y.) 569; Hilliard on Mortgages, 175, 176.

If there be no contract, the rule would be as declared in *Sargeant* v. *How*, 21 Ill. 148, and *Vansant* v. *Allmon*, 23 id. 34. The authorities relied upon by appellant, to establish a different rule, so far as we have been able to examine, were cases where no stipulation was made giving one assignee a preference over another. These views are the same as were expressed in the previous opinion filed in this case, and we see no reason to modify them. We have, however, thought it proper to give some additional reasons for the judgment then announced.

It is urged with great earnestness and plausibility, in the petition for a rehearing, that appellant having purchased the

notes first maturing, he must be protected and preferred in his equity in the mortgage security, unless notice of appellee's prior purchase and contract for a preference can be charged upon him. On the other side, it is urged, with equal earnestness, that the rule of *caveat emptor* applies, and that appellant purchased at his peril. We regard the proposition as fully settled and firmly established, that, as between the parties, the mortgagee may assign any of a series of notes, secured by mortgage, and by agreement give a prior equity or lien on the mortgaged premises for their payment out of the fund, in preference to those he retains. And we regard the rule as equally well established, that all persons taking the notes thus retained, with notice of the agreement for the priority of lien given to the others, are as fully bound by that preference as are the parties to the contract. It is a matter about which parties may legally contract, and, when they do so, it will be upheld and enforced precisely like other lawful agreements.

We then have the question whether a subsequent purchaser of the remaining notes, which have been put into circulation without assignment, although they mature before those to which the preferred lien has been given, is required to make inquiry to ascertain whether there are latent but superior equities existing in favor of those already transferred. A person who receives a note after maturity, whether by delivery or by indorsement, takes it subject to all equities and defenses existing against the instrument. But where it is acquired before its maturity the law is otherwise. As a general rule a person, who acquires property or a chose in action by an equitable assignment, takes it burdened with all prior equities, whether latent or disclosed. And this rule applies with equal force to collateral securities as to choses in action.

This is illustrated by the purchase of an open account, where the assignee only acquires the equitable but not the legal title. In such a case the purchaser obtains precisely the equitable rights of his vendor and no more. If previously paid, if unjust, or it had been previously assigned to another, he would take it subject to these equities. In such a case the

assignee can only enforce his equitable title, be that what it may. If superior, it will be preferred, but if not it will be deferred to prior or better equitable rights. And this is true of a large class of equities.

While a purchaser of a note, before maturity, without notice, is protected against all defenses to the note, still, if it is secured by a mortgage or other collateral security, the assignment would not cut off prior equities against the mortgage or collateral fund, although they might be secret and latent. The mortgage in this case was executed and held as a collateral security for the payment of these notes, and, before Godfrey sold them to Heaton, and while they were in his hands, it was equally a security for the payment of all of them. Nor did it, by the transfer of two of them to appellee, with an agreement that they should have a preferred lien on the mortgaged property, cease to be a security for the payment of all of the notes. But, by that agreement, the two notes, first maturing, became postponed in the order in which the lien then existed. Appellee then became vested with an equitable lien upon the property, to have his notes paid out of the fund before the notes retained by Heaton could be enforced against the mortgaged property.

Our statute having made no provision for the manner in which mortgages may be assigned, or for the recording of such assignments, they stand as they were at the common law, and such assignments are merely equitable, and incident to the debt to secure which they are given. Such assignments not being required to be recorded, they must be governed by the same rules that governed contracts and agreements before the adoption of our registry acts. At the common law the first conveyance held, whether the subsequent purchaser had notice or not, if the prior sale was supported by a sufficient consideration, and was made in good faith. It is only by the force of our recording acts, that a subsequent deed or contract entered into for value, and without notice, and first recorded, is preferred to that of a prior date. In such a case the *laches* of the first purchaser, in failing to give notice to the world of his rights to the property, in the mode prescribed by the statute,

or by bringing notice home to the subsequent purchaser, postpones his rights to that of the subsequent innocent purchaser. At common law the purchaser was put upon inquiry, to ascertain whether there existed legal or equitable liens or incumbrances upon the land, or whether the vendor had title.

And the same is true of a variety of secret liens which the law recognizes and enforces. Of this character is a mechanic's lien, the landlord's lien on growing crops. And the same is true in the purchase of personal property, where the vendee only acquires the title of his vendor. While possession of such property is *prima facie* evidence of ownership, still, if the vendor has no title, his vendee, without notice, acquires none. The assignment of the mortgage, whether indorsed upon the instrument itself, or by the indorsement or delivery of the note, is only equitable, and places the equitable holder of the mortgage, as a security to his debt, and as to defenses and equities affecting it, in the same situation as a purchaser of overdue paper, or of real estate against which there is a valid secret lien, or of chattels to which the vendor has no title, and it is no more inequitable or unjust than it is in such cases, that he should be compelled to yield to superior equities.

In the case of *Olds* v. *Cummings*, 31 Ill. 188, this court said: "We have not met with a single case, where a remedy has been sought in a court of chancery, upon a mortgage, by an assignee, in which every defense has not been allowed which the mortgagor or his representatives could have made against the mortgagee himself, unless there has been an express statute authorizing the assignment of the mortgage itself. There are many cases in which assignees have been protected against latent equities of third persons, whose rights and even names do not appear upon the face of the mortgage. And the reason is, that it is the duty of the purchaser to inquire of the mortgagor if there be any reason why it should not be paid; but he should not be required to inquire of the whole world to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage, as for instance a *cestui que trust*." And the same rule was recognized in the case of *Fortier* v.

*Darst*, 3 id. 212. It is contended that these cases must control the one under consideration.

When these cases speak of latent equities of third persons, it is, of course, meant, equities of persons disconnected with the transaction,— persons not parties to the mortgage or the payee of the notes to secure the payment of which it was given. To be protected, the assignee must omit no duty, nor fail to exercise every precaution which prudence demands of all men acting in reference to matters of moment. In this case, when Walker purchased these notes, Heaton held them by an equitable title only, they having been transferred by delivery and not assigned. The mortgage was not in Heaton's possession, nor was it recorded. It was then in the hands of appellee. The notes in Heaton's hands, and which appellant purchased, were not indorsed, and were only held by an equitable title and appellant was bound to know that they were subject to all equities existing as to the fund at the time they were purchased. He must be presumed to know that such equities would not be cut off by his purchasing an equitable title, nor did the subsequent indorsement of the notes by the payee have the effect to bar prior equities.

It does not appear that he ever desired to see the mortgage, or require it to be recorded when he made the purchase. He seems to have relied upon the solvency of Heaton if we may judge from his conduct, as he did not see the maker, the payee, or search the records for the mortgage, or require Heaton to produce it. He took the notes with Heaton's indorsement when he knew that the payee would in no event be liable if the notes could not be collected. Had he called on the payee of these notes he would then have learned that the other notes had been transferred with a preferred lien on the mortgaged premises. And it is no more than reasonable precaution, to require a person dealing in equitable claims to paper and equitable securities for its payment, to see the maker, and, in case that there are several notes thus secured, and a portion only of them are offered, to see the payee, and learn from him whether the others have been sold with a preferred lien upon the security.

This is perhaps as far as we should be inclined to require inquiry in such cases. Courts are not inclined, as a general rule, to extend protection to secret unrecorded liens, but we think this case falls within the principles requiring the protection of appellee's purchase of these notes.

Appellant knew that there were other notes secured by the same mortgage, and that they were negotiable, and, if already negotiated, with an agreement that they should first be paid out of the mortgaged premises, that his equities must be postponed. And, we think, it was negligence in him not to have at least seen all of the parties whose names originally appeared to the paper. The law never relieves a person from loss sustained by his own negligence, especially when it would be cast on another who has omitted no duty. Where one of two innocent persons must sustain a loss, the law will impose it on him who has been guilty of *laches.* In this case appellee did all the law required of him, when he took the assignment of the notes. He then acquired the possession of the notes and of the mortgage. He did not leave them in the hands of the payee or of Heaton, from whom he purchased, that others might possibly be invested by the *indicia* of ownership. Had he recorded the mortgage with an assignment declaring a preference in the security in his favor, the record of the assignment would not have been constructive notice, as the law does not require such assignments to be recorded. For it to have become notice appellant must have seen and read it.

Appellee was unable to have done more, or at least the law required no more of him. Had he recorded the mortgage without the assignment it would not have tended to put him on inquiry. On the other hand, appellant purchased without seeing or making inquiry, even of Heaton, as to who had the other notes or the mortgage. He made no effort, so far as we can see, to learn the true state of the transaction. Again, appellee furnished property to the value of these notes, which was transferred to Godfrey, and for which these notes were received in part payment. This then gave appellee an older, and at least an equal equity with that of appellant. We are therefore of

the opinion that appellant must be left to pursue his remedy against his assignors, if he has any, or against the mortgage property subject to the preferred and prior lien of appellee. And the decree of the court below must be affirmed.

*Decree affirmed.*