CYRUS L. BROWN v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

January 30, 1899.

Nos. 11,463—(248).

### Life Insurance—Assignment of Policy without Consideration—Assignment by Assignee.

The defendant issued a policy of insurance on the life of the plaintiff, payable to himself in 20 years. Subsequently plaintiff assigned the policy to H., by a written assignment absolute in form, but in fact merely as security or indemnity for a loan which he agreed to procure for the plaintiff, but which he failed to do. H., however, remained in the possession of the policy, and subsequently assigned it to a bank as security for a loan, which he has never repaid. The bank made the loan relying on the absolute assignment from plaintiff to H., and believing, from an examination of it, that H. was the owner of the policy, and without any knowledge that plaintiff had any claim to it, or of any equities between him and H. When the policy matured, the defendant paid it to the bank, but with notice of plaintiff's claim. From the time the policy was assigned to H. until it matured, H. paid the premiums on it, which plaintiff has never repaid.

### Equities of Insured—Estoppel.

1. Held, that the bank took the assignment of the policy subject to the equities between plaintiff and H., and that plaintiff was not estopped, as to the bank, to assert his rights, by the fact that he had executed and delivered to H. an assignment of the policy absolute in form.

### Lien for Premiums Paid.

2. But held, also, that H. had a lien on the policy for the premiums he had paid; that this right passed to the bank by his assignment, and, to

the amount of the premiums paid by H., it was entitled to the money on the policy. And the payment by the defendant to the bank constituted a defense, pro tanto, to an action on the policy.

## Upon Reargument.

### July 11, 1899.

#### Assignments Valid.

. *Held*, that the policy, being valid when issued, was assignable by plaintiff to H., and by H. to the bank.

#### Equities of Insured—Estoppel.

Also, that the bank would take the policy subject to the equities of the plaintiff, unless the conduct of the latter was such as to equitably estop him, but the mere fact that the assignment from him to H. was absolute in form would not create such an estoppel.

#### Laches of Insured.

But the laches of the plaintiff, and his practical abandonment of the policy for 11 years, by neglecting to take any active measures to recover it from H., and neglecting during all that time to pay the premiums necessary to keep it from lapsing, would estop him from asserting any rights under the policy, or attempting to avail himself of its benefits as against H. or his assignee, the bank, who had kept it alive by paying the premiums at his own expense.

Action in the district court for Hennepin county to recover the amount of a life insurance policy. The court, Johnson, J., found in favor of plaintiff for the sum of $2,027, and interest, and from an order denying a motion for a new trial, defendant appealed. Reversed.

*Hale & Montgomery*, for appellant.

Plaintiff cannot take advantage of his own wrongful acts and laches, to defeat an innocent bona fide holder. Fassett v. Smith, 23 N. Y. 252. The assignee of a chose in action takes a perfect title, if the owner has armed his immediate assignee with evidence of absolute ownership, and has thereby misled such subsequent assignee into purchasing on the strength of the apparent ownership. The owner, having placed his immediate assignee in a position to commit the wrongful act, must suffer. Cochran v. Stewart, 21

Minn. 435; McNeil v. Tenth, 46 N. Y. 325; Weyh v. Boylan, 85 N. Y. 394; Moore v. Metropolitan, 55 N. Y. 41; Colebrooke, Coll. Sec. § 45; Jones, Pledges, § 466. By weight of authority, the owner of a life insurance policy issued on his own life may assign it, though the assignee has no insurable interest in the life; and the policy is assignable like any other chose in action, if it contains no provision to the contrary. Ashley v. Ashley, 3 Sim. 149; Valton v. National, 20 N. Y. 32; Olmsted v. Keyes, 85 N. Y. 593; Travelers v. Healy, 25 App. Div. (N. Y.) 53; Clark v. Allen, 11 R. I. 439; St. John v. American, 2 Duer, 419; Bursinger v. Bank, 67 Wis. 75; Lemon v. Phoenix, 38 Conn. 294; Fairchild v. Northeastern, 51 Vt. 613; Mutual v. Allen, 138 Mass. 24; Harrison v. McConkey, 1 Md. Ch. 34; Souder v. Home, 72 Md. 511; Murphy v. Red, 64 Miss. 614; Currier v. Continental, 57 Vt. 496; Robinson v. U. S. Mut. Acc. Assn., 68 Fed. 825; Langdon v. Union, 22 Am. L. Reg. 385; Martin v. Stubbings, 126 Ill. 387; Bloomington v. Blue, 120 Ill. 121; Eckel v. Renner, 41 Oh. St. 232; Hine & N. Assignment, 73, 75, 81; Bliss, Life Ins. (2d Ed.) §§ 23, 26, 30; Angell, Life Ins. § 325. See Hogue v. Minn. P. & P. Co., 59 Minn. 39. Cases holding the contrary doctrine hold that the policy may be assigned to secure a debt. The presumption is that the holder or pledgee is holder for value with good title. Colebrooke, Coll. Sec., §§ 431, 436-438; Jones, Pledges, § 146.

Even if Hadley had no insurable interest, and the assignment to him was illegal, so that he could not have enforced payment, and the bank had no insurable interest, plaintiff cannot raise these questions, because they were not raised by the insurance company. The case is the same as if the company had been sued on the policy, and had paid the money into court to await an adjudication whether plaintiff or the bank was entitled to it. Standard v. Catlin, 106 Mich. 138; Milner v. Bowman, 119 Ind. 448; Meyers v. Schumann, 54 N. J. Eq. 414. G. S. 1894, § 5273, provides only for a method of procedure, which may or may not be adopted. Defendant may raise the question of equitable estoppel to show ownership in the bank. See Parker v. Crittenden, 37 Conn. 148; Krathwohl v. Dawson, 140 Ind. 1; Rose v. Teeple, 16 Ind. 37; Rose v. Hurley, 39 Ind. 77; Kinnear v. Mackey, 85 Ill. 96. Plaintiff, having been guilty of gross negligence, is entitled to no consideration. Gleason v. Dis-

trict of Columbia, 127 U. S. 133. · The notice on the policy would not prevent the bank from enforcing its claim against defendant, nor was it necessary for defendant to consent to the assignment to make it complete. See Nicollet Nat. Bank v. City Bank, 38 Minn. 85; Hogue v. Minn. P. & P. Co., supra; 2 May, Ins. §§ 388–396; Mutual v. Hamilton, 5 Sneed (Tenn.) 268; Bliss, Life Ins. § 333; New York v. Flack, 3 Md. 341; Marcus v. St. Louis, 68 N. Y. 625.

*Smith & Smith*, for respondent.

Under the law as declared in MacDonald v. Kneeland, 5 Minn. 283 (352), and Hogue v. Minn. P. & P. Co., 59 Minn. 39, the bank obtained no title by the assignment. There is no equitable estoppel to prevent plaintiff from denying the bank's title. There can be no such estoppel because the bank is not a party, and has no interest in the proceeding. No judgment in this case would affect the bank. Had defendant desired to have the rights of the bank considered, it should have brought the bank into court, under G. S. 1894, § 5273. Defendant cannot assert title in a stranger, without first paying the money into court and summoning the alleged owner. Truesdale v. Sidle, 65 Minn. 315; Birdsall v. Fischer, 17 Minn. 76 (100); Peck v. Snow, Church & Co., 47 Minn. 398. An estoppel available only to a stranger to the suit will not avail either of the parties. 7 Am. & Eng. Enc. 23. None of the elements of an equitable estoppel exist. 7 Am. & Eng. Enc. 12–23. An estoppel can never be allowed where it would itself perpetrate a fraud, work injustice or fail to protect the innocent. 1 Herman, Est. §§ 14, 20; Mills v. Graves, 38 Ill. 455; Turnipseed v. Hudson, 50 Miss. 429. Estoppel must be mutual. Majenborg v. Haynes, 50 N. Y. 675; Maguire v. Selden, 103 N. Y. 642; Empire v. Moers, 27 App. Div. (N. Y.) 464. See Califf v. Hillhouse, 3 Minn. 217 (311); Combs v. Cooper, 5 Minn. 200 (254); Pence v. Arbuckle, 22 Minn. 417; Whitacre v. Culver, 8 Minn. 103 (133); Whitcomb v. Hardy, 68 Minn. 265; First v. Ricker, 71 Ill. 439; People v. Brown, 67 Ill. 435; Ball v. Hooten, 85 Ill. 159; Davidson v. Young, 38 Ill. 145; Dorlarque v. Cress, 71 Ill. 380; Chandler v. White, 84 Ill. 435; Thomas v. Bowman, 29 Ill. 426.

Under the provisions of the policy, without the consent of the company no assignee can maintain an action on the policy; nor will

title pass without the written consent of the insurer.  Hogue v. Minn. P. & P. Co., supra; Nicollet Nat. Bank v. City Bank, 38 Minn. 85; Merrill v. New England, 103 Mass. 245; Marcus v. St. Louis, 68 N. Y. 625.  An assignment without consent of the company, when consent is required, is invalid, and confers no title to the assignee as against the company, and the proceeds will be paid to the assignor or his heirs.  Unity v. Dugan, 118 Mass. 219; Commercial v. Treasury, 61 Ill. 482; Kase v. Hartford, 58 N. J. L. 34; Wilson v. Hill, 3 Metc. (Mass.) 66; Flanagan v. Camden, 1 Dutch. 506; National v. Lupold, 101 Pa. St. 111.

While the insured may himself assign the policy to one having an insurable interest, or to secure a debt to one having no such interest, one who holds by assignment from the insured may not make a subsequent assignment to a person who has no insurable interest and is not a creditor of the insured.  In the cases cited by defendant, except Ashley v. Ashley and Souder v. Home, the only question was whether the insured could make a valid assignment to his own assignee with or without insurable interest.  The position here maintained by plaintiff is supported by the following authorities: 2 May, Ins. § 398; 2 Beach, Ins. § 850; 2 Joyce, Ins. § 889; Trinity v. Travelers, 113 N. C. 244; 3 Kent, Com. 368; Warnock v. Davis, 104 U. S. 775, 779; Cammack v. Lewis, 15 Wall. 643; Stevens v. Warren, 101 Mass. 564; Corson Appeal, 113 Pa. St. 438; Gilbert v. Moose, 104 Pa. St. 74; Ruse v. Mutual, 23 N. Y. 516; Ruth v. Katterman, 112 Pa. St. 251; Price v. Supreme, 68 Tex. 361; Missouri v. McCrumb, 36 Kan. 146; Missouri v. Sturges, 18 Kan. 93; Cawthon v. Perry, 76 Tex. 383; Lewy v. Gilliard, 76 Tex. 400; Swick v. Home, 2 Dill. 160; Archibald v. Mutual, 38 Wis. 542; Rison v. Wilkerson, 3 Sneed (Tenn) 565; Page v. Burnstine, 102 U. S. 664; Downey v. Hoffer, 110 Pa. St. 109; Hodge v. Ellis, 76 Ga. 272; Stambaugh v. Blake, 1 Mona. (Pa.) 609; Keystone v. Norris, 115 Pa. St. 446; Guardian v. Hogan, 80 Ill. 35; Schonfield v. Turner, 75 Tex. 324; Basye v. Adams, 81 Ky. 368; Roller v. Moore, 86 Va. 512; Helmetag v. Miller, 76 Ala. 183; Michigan v. Rolfe, 76 Mich. 146; Singleton v. St. Louis, 66 Mo. 63; Mitchell v. Union, 45 Me. 104; Mutual v. Hoyt, 46 Mich. 473; Gilbert v. Moose, supra; Franklin v. Hazzard, 41 Ind. 116; Alabama v. Mobile, 81 Ala. 329; Armstrong v. Mutual Life

Ins. Co., 11 Fed. 573; Metropolitan v. O'Brien, 92 Mich. 584; Mc-Donald v. Birss, 99 Mich. 329; Succession of Risley, 11 Roberts (La.) 298; Batdorff v. Fehler, 8 Cent. Rep. 230; Shugar v. Gorman, 3 Cent. Rep. 558; Franklin v. Sefton, 53 Ind. 380, 388; Ruse v. Mutual, supra.

MITCHELL, J.

This action was brought to recover on a life insurance policy which had been paid at its maturity to the Security Bank of Minneapolis; the plaintiff claiming that he was the owner of the policy, and that the defendant had no right to pay the money to the bank. The action was tried by the court, which ordered judgment for the plaintiff for the face of the policy. All the assignments of error challenge the sufficiency of the findings of fact to support the conclusions of law. Omitting immaterial matters, and stating the findings according to their legal effect, they are substantially as follows:

On April 6, 1872, the defendant issued to the plaintiff a policy on his life for $2,000, payable to himself in twenty years, or, in case of his death before that date, to his personal representatives or assigns. On March 16, 1881, the plaintiff assigned the policy to one Hadley. This assignment, which was indorsed on the policy, was absolute in form, but was made in fact merely as indemnity or security to Hadley for a loan of $1,000, which he agreed shortly to procure for the plaintiff, but which he failed to do; so that the consideration for the assignment wholly failed, and hence, as between plaintiff and Hadley, the former was the owner of the policy, and the latter had no interest in it. Hadley, however, remained in possession of the policy until May 23, 1887, when he assigned and delivered it to the Security Bank of Minnesota as security for money loaned by it to him, and which he has never repaid.

When the officers of the bank took an assignment of the policy as security, they did not know "how said Hadley became possessed of said policy, or the assignment of the same from Brown to Hadley, * * * or what was the consideration for the assignment," but, "from an examination of said policy and said assignment, believed that said Hadley was the owner of said policy." They took the as-

signment from Hadley "for a valuable consideration, without any notice or knowledge of any claim on the part of said Cyrus L. Brown or his wife to said policy, and without any knowledge or notice of any rights or equities existing between said Brown or his said wife and said Hadley in any manner relating to said policy"; nor did they ever acquire any such notice or knowledge prior to the date of the payment of the policy at its maturity.

The policy, with the two assignments, remained in the possession of the bank until the policy matured, in 1892, when the defendant paid the amount due on it to the bank, after taking from it a bond of indemnity against the claims of any other persons. Plaintiff had paid the premiums on the policy up to the time he assigned it to Hadley, in March, 1881; and thereafter up to the time it matured, in 1892, the premiums (the amounts of which are found by the court) were paid by Hadley, and have never been repaid to him by plaintiff. In March, 1884, plaintiff notified the defendant not to pay any money on the policy to Hadley, or to any one else except himself, and that Hadley had no right to or interest in the policy; but there is no finding that plaintiff ever took any active measures to secure a return of the policy from Hadley. He never knew that Hadley had assigned it to the bank until after the defendant had paid it to the bank. Neither the bank nor Hadley had any insurable interest in the life of the plaintiff.

The defendant's defense is that it has paid the amount of the policy to the party entitled to it, to wit, the bank; and it bases the bank's right to the money on two legal propositions, viz.: (1) That the policy was assignable to any one, although not having any insurable interest in the life of the insured; and (2) although, as between plaintiff and Hadley, the former owned the policy, yet the plaintiff, by his conduct in clothing Hadley with all the indicia of ownership, is estopped to assert his own rights as against the bank, an innocent purchaser for value. The plaintiff takes issue with the defendant on both propositions.

In view of the conclusion at which we have arrived upon the second proposition, it becomes unnecessary to consider the first, although we remark in passing that we have not discovered anything which has changed the impression as to the state of the authorities

on the question which we expressed (obiter, it is true) in Hogue v. Minn. P. & P. Co., 59 Minn. 39, 60 N. W. 812.

We do not, however, place our decision of the second proposition upon the ground advanced by counsel for the plaintiff, which is, in substance, that estoppels must be mutual and reciprocal; that only parties to the suit, and their privies, can take advantage of an estoppel existing as between themselves; and that an estoppel available only to a stranger to the action will not avail either of the parties; hence, even if an estoppel existed in favor of the bank against the plaintiff, this is not available to the defendant. This is a misapplication of a very familiar and well-settled rule of law. If the defendant had paid the amount of the policy to the party who, as between plaintiff and the bank, was entitled to it, that was a perfect defense to the action. The issue before the court was who was entitled to the money,—plaintiff or the bank; and for this purpose it was competent for the defendant to establish the right of the bank as against plaintiff, whether that right was based upon equitable estoppel or upon contract.

We, however, place our decision upon the ground that, this policy being a mere nonnegotiable chose in action, the bank occupies the exact position of its assignor, Hadley, and took it subject to the equities existing between him and his assignor, the plaintiff, unless the latter is equitably estopped by his conduct from asserting those equities against the bank, and that there are no facts in this case which create any such estoppel.

Upon the facts found, the defendant has nothing upon which to base an equitable estoppel, except the bare fact that plaintiff delivered possession of the policy to Hadley, accompanied by an absolute assignment, without any expressed conditions or limitations, and thereby clothed him with the indicia of absolute ownership. The bank officers relied upon, and based their belief in Hadley's ownership upon, their examination of the policy and the assignment, without knowing, and presumably without attempting to ascertain, how or for what purpose the assignment to Hadley was made, or what the consideration for it was. If it be said that plaintiff was negligent in not taking active measures to secure a return of the policy from Hadley, and in not personally paying the premi-

ums on his own policy, the answer is that, if so, such negligence did not constitute any breach of duty, either legal or moral, towards the bank, or any one else who might see fit to deal with the policy. The doctrine that the assignee of a nonnegotiable chose in action takes it subject to all existing equities and defenses is not confined to equities or defenses existing in favor of the debtor or obligor who executed the chose in action, but it also applies to cases where the chose in action has gone through successive assignments to the second and subsequent assignees, if there were equities subsisting between the original assignor, or any other assignor, and his immediate assignee, in favor of the former.

What is called the doctrine of "latent equities" has received some judicial support. This means that in a case like the present the equities of plaintiff, the original assignor, are latent, and cannot prevail against the title of the bank, the second assignee; that the only defenses subject to which the assignee of a nonnegotiable chose in action purchases are those existing in favor of the debtor who issued the obligation or security. This doctrine has been generally condemned as unsound, and tending to extend the peculiar qualities of negotiable paper to things in action not negotiable, and to destroy the fundamental distinction between negotiable and nonnegotiable demands. For a full discussion of this whole subject, see 1 Pomeroy, Eq. Jur. § 707, et seq.; Pomeroy, Code Rem. § 154, et seq.; also Bush v. Lathrop, 22 N. Y. 535.

The leading case in favor of the doctrine of "latent equities" is Moore v. Metropolitan, 55 N. Y. 41, which squarely overrules Bush v. Lathrop, supra; saying that it and McNeil v. Tenth, 46 N. Y. 325, cannot both stand, unless there shall be found to be a distinction between the acquisition of title to stocks in a corporation, and choses in action not negotiable, and then concludes that there is no distinction. But, as Mr. Pomeroy clearly points out, the court in Moore v. Metropolitan do not make the slightest allusion to the narrow limits placed in McNeil v. Tenth upon the use of the estoppel, viz. to cases in which the assignor, by a written instrument over his signature, confers, not only the apparent title, but the unconditional power of disposition over the security. But the most important distinction between the two cases lies in the fact that in the

McNeil case the subject of the assignment was not a mere nonnegotiable chose in action, but certificates of corporate stock, which are universally dealt in by business men as if they were in all respects negotiable, and are transferred from hand to hand by a blank assignment accompanied by a power of attorney giving the holder full power of disposition according to the usual course of dealing with like securities. The decision is but another instance of the manner in which business usages are adopted and incorporated into the law by the progressive course of judicial legislation.

But no such considerations exist in the case of an ordinary chose in action, like a life insurance policy, which is not only nonnegotiable in fact, but is so considered and treated by business men. And if, in the case of an ordinary nonnegotiable chose in action, the effect of an estoppel be produced against an assignor from a mere assignment, absolute on its face, executed by the owner and delivered to his assignee, it is but an easy step, as Mr. Pomeroy suggests, to extend the doctrine of equitable estoppel to the debtor or obligor himself, because he has issued an undertaking which creates an apparent liability against himself.

Our conclusion is that there was no estoppel against the plaintiff in favor of the bank. But, notwithstanding this, and that the consideration for the assignment from plaintiff to Hadley failed, and even conceding that the assignment was invalid, still Hadley had a lien upon the policy for the amount paid by him for premiums. The assignment from him to the bank transferred to it all his interest in the policy, which was the amount of the premiums advanced by him. To that amount the bank was entitled to the money on the policy, and to that extent the defendant rightfully paid the money to the bank; and this constituted a defense, pro tanto, to this action. Therefore, according to the findings, the court ought to have deducted from the face of the policy the amount of the premiums paid by Hadley, with interest, and ordered judgment against the defendant only for the balance.

The cause is remanded, with directions to the court below to modify its conclusions of law and order for judgment in accordance with this opinion.

START, C. J. (dissenting).

I dissent.    The statute makes all choses in action which were not negotiable by the law merchant so far negotiable that the legal title thereto may be transferred by an assignment thereof, subject to any defense thereto, legal or equitable, that the maker may have. Therefore there is, in legal effect, written upon all nonnegotiable paper, these words:    "This instrument is assignable, subject to any defense which the maker may have to it."    Now, to conclude, from the fact that the maker of such an instrument is not estopped, because he has issued an undertaking creating an apparent liability against himself, that the payee, who has clothed his assignee with the apparent absolute title thereto, is not equitably estopped from asserting any latent equities as to such title against a bona fide purchaser, is to reason from false premises, because in the former case the proposed purchaser is admonished by the law that, if he buys, he does so subject to any equities the maker may have, but in the latter he is advised that the payee may transfer the absolute legal title by an assignment.

Equally unsound, it seems to me, is the claim that to apply the doctrine of equitable estoppel, as between the payee of a nonnegotiable instrument and a bona fide purchaser who parted with his money in reliance upon an absolute assignment of the paper, makes the paper, in effect, negotiable.    The application of the doctrine in such a case does not affect the negotiability of the instrument, or give to it any rights other than such as the statute gives, for it is still subject to all defenses valid as to the original parties.    In this case the plaintiff conferred upon his assignee the apparent absolute legal title to, and ownership of, the insurance policy, and permitted him to retain it and pay the premiums for 10 years, and then, after the bank had honestly parted with its money in reliance upon such apparent ownership, he seeks to assert a latent equity existing between him and his assignee as to the title.    Upon the plainest principles of justice he ought to be estopped from asserting his equities to the prejudice of the purchaser, and such seems to be the law. Moore v. Metropolitan, 55 N. Y. 41; Bigelow, Estop. 562; Colebrooke, Coll. Sec. §§ 436, 439; Jones, Pledges, § 466.

COLLINS, J. (dissenting).

I agree with Chief Justice START in his dissenting opinion.

The appellant having petitioned for a reargument, the court granted the petition in the following order, filed on April 10, 1899.

PER CURIAM.

In view of the facts that the question involved is an important one, that the precise ground upon which the decision was based was not argued by counsel, and was decided by a divided court:

It is ordered that a reargument be, and hereby is, granted of the single question whether the Security Bank of Minnesota took the policy in suit subject to the equities of the plaintiff. Ordered, further, that the case shall be submitted on briefs, to be filed on or before June 15, next.

*Hale & Montgomery,* for appellant.

The policy was a nonnegotiable instrument, and was assignable like any other chose in action. See Hogue v. Minn. P. & P. Co., 59 Minn. 39. The bank had a right to assume that the policy was lawfully transferred to Hadley for a valuable consideration, that Brown spoke the truth by his assignment, and that Hadley had a right to transfer it as collateral security for a loan. The rights of the bank do not depend on the actual title which Hadley had as between himself and Brown, but on the act of Brown himself, which precludes him from disputing the title which he had apparently conferred on Hadley. This principle is not in conflict with G. S. 1894, § 5157. The rule grows out of the principle that where one of two innocent persons must suffer from the act of another, it must be the one who has permitted the act to be done. Cochran v. Stewart, 21 Minn. 434. Bush v. Lathrop, 22 N. Y. 535, is no longer authority on the precise question therein involved. In McNeil v. Tenth, 46 N. Y. 325, and Moore v. Metropolitan, 55 N. Y. 41, the rule adopted by the majority opinion in the case at bar, as laid down in Bush v. Lathrop, was changed and modified, and it was held that where the owner of property confers on another an apparent title to or power of disposition over it, he is estopped from asserting his title as against an innocent third party who has dealt with the apparent owner in reference thereto without knowledge of the claims of the true

owner; and that the rights of such third party do not depend on the actual title or authority of the one with whom he dealt, but on the act of the owner, which precludes him from disputing the title or authority he has apparently conferred. See also Greene v. Warnick, 64 N. Y. 220; Moffett v. Parker, 71 Minn. 139; Davis v. Bechstein, 69 N. Y. 440; Weyh v. Boylan, 85 N. Y. 394; Fairbanks v. Sargent, 104 N. Y. 108, 116; Colebrooke, Coll. Sec. §§ 436–438; Jones, Pledges, § 466; Bigelow, Estop. 560, 561. The fallacy of the decision in the case at bar lies in attempting to discriminate between the different kinds of nonnegotiable choses in action, and to confine the rule which protects bona fide purchasers to those nonnegotiable instruments which are more generally sold and transferred in open market. Rapps v. Gottlieb, 142 N. Y. 164; Cowdrey v. Vandenburgh, 101 U. S. 572; International v. German, 71 Mo. 183; Woodruff v. Morristown, 34 N. J. Eq. 174; Plummer v. Peoples, 65 Iowa, 405; Wood's Appeal, 92 Pa. St. 379; Brewster v. Sime, 42 Cal. 139, 146; Williams v. Fletcher, 129 Ill. 356, 366; Spooner v. Cummings, 151 Mass. 313; Horn v. Cole, 51 N. H. 287; Grocers v. Neet, 29 N. J. Eq. 449; Newton v. Newton, 46 Minn. 33, 37; MacLaren v. Cochran, 44 Minn. 255; Cochran v. Stewart, 57 Minn. 499, 509.

*Smith & Smith,* for respondent.

The bank was bound to make diligent inquiry as to the title and value of the paper before buying it, and was bound to make this inquiry of persons and parties interested in the paper. Cochran v. Stewart, 21 Minn. 435, 441; 2 Pomeroy, Eq. Jur. §§ 810, 813; Olds v. Cummings, 31 Ill. 188; Norton v. Rose, 2 Wash. (Va.) 233; Murray v. Lylburn, 2 Johns. Ch. 441; Mickles v. Townsend, 18 N. Y. 575; Walker v. Dement, 42 Ill. 272, 277; Robinson v. Jefferson, 1 Del. Ch. 244; Lane v. Smith, 103 Pa. St. 415, 420; Trustees v. Wheeler, 61 N. Y. 88. The burden of proof is on the purchaser of nonnegotiable paper to prove good faith and diligence. Devoe v. Brandt, 53 N. Y. 462; McLeod v. First, 42 Miss. 99; Lynch v. Beecher, 38 Conn. 490; Porter v. Parks, 49 N. Y. 564; Newton v. Newton, 46 Minn. 33, 38. The party asking the benefit of estoppel must have acted in good faith and with reasonable diligence, otherwise no equity will arise in his favor. Thorne v. Mosher, 20 N. J. Eq. 257; Royce v. Watrous,

73 N. Y. 597; Wilcox v. Howell, 44 N. Y. 398; Moore v. Bowman, 47 N. H. 494; 1 Story, Cont. § 475; 2 Pomeroy, Eq. Jur. § 810. Defendant knew that he who purchases nonnegotiable paper takes it subject to the rights of parties to the paper. Walker v. Dement, supra; Kleeman v. Frisbie, 63 Ill. 482. To give the conduct or admission of a party the character of an estoppel, it must have been fraudulent in its purpose, or so unjust in its results as to make out against him a clear case of culpable negligence in not having contemplated it as a natural consequence. Sutton v. Wood, 27 Minn. 362; Combs v. Cooper, 5 Minn. 200 (254); Whitacre v. Culver, 6 Minn. 203 (297).

Defendant is estopped from urging an estoppel in favor of the bank. Defendant cannot assert an estoppel in pais for some one else; to be available, it must be shown to have been made to affect the person who asserts the estoppel. Sutton v. Wood, supra; Reynolds v. Lounsbury, 6 Hill, 534; Dezell v. Odell, 3 Hill, 215; Pennell v. Hinman, 7 Barb. 644; Zabriskie v. Smith, 13 N. Y. 322, 338. The notice to defendant before it paid the money to the bank notified defendant to pay the money at its peril. Arnold v. Hoschildt, 69 Minn. 101. Brown's equities were prior and superior.

There is no ground for raising an estoppel against Brown to assert the truth. If the element of fraud is wanting, there is no estoppel. 2 Story, Eq. Jur. § 1543; Combs v. Cooper, supra; Califf v. Hillhouse, 3 Minn. 217 (311); Pence v. Arbuckle, 22 Minn. 417; 1 Herman, Estop. § 20; Davidson v. Young, 38 Ill. 145; Chandler v. White, 84 Ill. 435; Maguire v. Selden, 103 N. Y. 642; Empire v. Moers, 27 App. Div. (N. Y.) 464; Martin v. Zellerbach, 38 Cal. 300; Moffett v. Parker, 71 Minn. 139. The bank is amply protected by its other securities, hence on this ground the equity is in favor of Brown. 3 Pomeroy, Eq. Jur. § 1414. The bank took subject to every right of Brown. McDonald v. Kneeland, 5 Minn. 283 (352); Moffett v. Parker, supra; Johnson v. Carpenter, 7 Minn. 120 (176); LaDue v. First Nat. Bank, 31 Minn. 33; Tuttle v. Wilson, 33 Minn. 422; Way v. Colyer, 54 Minn. 14; Klatt v. Dummert, 70 Minn. 467; Seebold v. Tatlie, 78 N. W. 967; Thompson v. Allen, 12 Ind. 539; Haskell v. Brown, 65 Ill. 29; Bjork v. Bean, 56 Minn. 244. An assignee of a nonnegotiable chose in action takes it subject to all defenses to which it was

subject in the hands of the original holder or assignor. 1 Pomeroy, Eq. Jur. §§ 700–715; 1 Beach, Eq. Jur. § 342; 1 Daniel, Neg. Inst. § 742; Bispham, Eq. (4th Ed.) § 170; 1 Parsons, Cont. (8th Ed.) 227; Willard, Eq. Jur. (Potter's Ed.) 462; Snell, Eq. 92; 2 Spencer, Eq. Jur. 862, 863; Tiedeman, Eq. Jur. §§ 60–64; 2 Wharton, Cont. § 842, et seq.; 2 White & T. L. C. Eq. (pt. 2) 880–893; 2 Randolph, Com. Paper, § 657; 2 Story, Eq. Jur. § 1188; 1 Pomeroy, Eq. Jur. § 710; 2 Herman, Estop. § 1188; Wade, Notice (2d Ed.) §§ 79, 431–436; Benjamin, Sales (4th Am. Ed.) § 433; Olds v. Cummings, supra; Westfall v. Jones, 23 Barb. 9; 2 Am. & Eng. Enc. 1079; Clute v. Robison, 2 Johns. 594, 602; 2 Chitty, Cont. 1366; Willis v. Twambly, 13 Mass. 204; Smith v. Carder, 33 Ark. 709; Longan v. Carpenter, 1 Colo. 205; Murray v. Lylburn, supra; Norton v. Rose, supra; Robinson v. Jefferson, supra; Guerry v. Perryman, 6 Ga. 119; Jack v. Davis, 29 Ga. 219; Gray v. Thomas, 18 La. An. 412; Marvin v. Inglis, 39 How. Pr. 329; Cutts v. Guild, 57 N. Y. 229; Ingraham v. Disborough, 47 N. Y. 421; Schafer v. Reilly, 50 N. Y. 61; Littlefield v. Albany, 97 N. Y. 581; Walker v. Dement, supra.

There is nothing in the character of the assignment from Brown to Hadley to change the result. The legal effect of any kind of assignment, without limitation, is to transfer the title, and carries an implied warranty of title in the assignor and that the instrument is genuine and unpaid. Ledwick v. McKim, 53 N. Y. 307; Murray v. Judah, 6 Cow. 484; Thrall v. Newell, 19 Vt. 202; Ross v. Terry, 63 N. Y. 613; 15 Am. & Eng. Enc. 853; 6 Id. 656; Tiedeman, Bills & N. § 74. The attempted distinction cannot avail defendant under G. S. 1894, § 5157. La Due v. First Nat. Bank, supra; Way v. Colyer, supra; Tuttle v. Wilson, supra; State v. City of Lake City, 25 Minn. 404; 2 Chitty, Cont. 1369. See Warner v. Whittaker, 6 Mich. 132; Matteson v. Morris, 40 Mich. 52; Bobb v. Taylor, 56 Mo. 311; Chouteau v. Allen, 70 Mo. 290; Wells v. Clarkson, 2 Mont. 230; Sanborn v. Little, 3 N. H. 539; Williamson v. New Jersey, 29 N. J. Eq. 311; King v. Lindsay, 3 Ired. Eq. 77; Rayburn v. Hurd, 20 Ore. 229; Burkett v. Moses, 11 Rich. L. (So. C.) 432; Walker v. Sargeant, 14 Vt. 247; Hamilton v. Glenn, 85 Va. 901. If an equitable estoppel was available to the bank in the case at bar, it would have been available in all the cases above cited. The statute conferring special

privileges on notes and bills of exchange is to be limited strictly to that class of instruments.   23 Am. & Eng. Enc. 357, 399; Cutts v. Guild, 57 N. Y. 229; Keech v. Baltimore, 17 Md. 32; Sutherland, St. Const. §§ 400–408.

The following opinion was filed on July 11, 1899:

PER CURIAM.

After receiving and considering the additional arguments of counsel, Justices MITCHELL and BUCK adhere to the views expressed and the result reached in the opinion of the court heretofore filed, while Chief Justice START and Justice COLLINS adhere to the views expressed in their dissent, and are in favor of reversal, on the grounds therein stated.   Justice CANTY, while still adhering fully to the position taken in the original opinion of the court upon the so-called doctrine of latent equities, is of opinion that the plaintiff, by reason of his conduct in allowing the policy, accompanied by an assignment absolute in form, to remain for 11 years in the possession of Hadley without taking any active measures to recover it, and in neglecting during all that time to pay the premiums necessary to keep it alive, is estopped by his laches and abandonment from now asserting any rights to or under the policy, or attempting to avail himself of its benefits which have been preserved by the expenditures of another.   While Chief Justice START and Justice COLLINS are in favor of a reversal on the broader ground already stated, they also concur in the view of Justice CANTY, that the case should be reversed on the ground that plaintiff is equitably estopped by his laches and abandonment from claiming the proceeds of the policy.   The court is  unanimously of opinion that the policy, being valid in its inception, was assignable to any one.

It follows that the opinion of the court, either unanimously or by a majority, is that:

1. The policy was assignable by plaintiff to Hadley, and by Hadley to the Security Bank.

2. The assignment from Hadley to the Security Bank would be subject to the equities of the plaintiff, in the absence of facts creating an equitable estoppel against him; and the mere fact that the

assignment from plaintiff to Hadley was absolute in form would not create such an estoppel.

3. But the laches of plaintiff, and his practical abandonment of the policy by neglecting for 11 years to take active measures to recover possession of it, or to keep it alive by paying the premiums on it, but allowing it to lapse unless Hadley saw fit to pay the premiums at his own expense, would estop him from now claiming any rights under or benefits from the policy, as against Hadley or the bank.

If the findings of the trial court on the latter point were clear and positive there would be nothing to do but to order judgment for the defendant. But it is not clear from the findings, especially in view of the latter part of the so-called fifteenth finding, how far they were intended to go, or what was the precise ground upon which the court ordered judgment for the plaintiff. Therefore, under the circumstances, we are of opinion that the proper disposition of the appeal is to reverse, and order a new trial of the cause in accordance with this opinion. It is so ordered.